No. 22-30227

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

**JACK VENTON VENABLE; BRENT K. KEMP,**
*Plaintiffs-Appellants*

v.

**SMITH INTERNATIONAL, INCORPORATED,**
*Defendant-Appellee*

---

**WILLIAM AGUIRRE,**
*Plaintiff-Appellant*

v.

**SMITH INTERNATIONAL, INCORPORATED,**
*Defendant-Appellee*

---

**KARL DROBISH,**
*Plaintiff-Appellant*

v.

**SMITH INTERNATIONAL, INCORPORATED,**
*Defendant-Appellee*

---

**CHARLES WALTER MYERS,**
*Plaintiff-Appellant*

**v.**

**SMITH INTERNATIONAL, INCORPORATED,**
*Defendant-Appellee*

---

**JOEL BRENT STORY,**
*Plaintiff-Appellant*

**v.**

**SMITH INTERNATIONAL, INCORPORATED,**
*Defendant-Appellee*

---

**Consolidated Appeal of Case Numbers
6:16-cv-00241, 6:17-cv-00860, 6:19-cv-00238,
6:19-cv-00239, and 6:19-cv-00240
In the Western District of Louisiana, Lafayette Division
The Honorable Robert R. Summerhays, Presiding Judge**

---

**BRIEF OF DEFENDANT-APPELLEE**

---

Samuel Zurik III
Robert P. Lombardi
Bryan Edward Bowdler
**THE KULLMAN FIRM, P.L.C.**
1100 Poydras Street, Suite 1600
New Orleans, LA 70163
Tel: (504) 524-4162
Fax: (504) 596-4189
sz@kullmanlaw.com
rpl@kullmanlaw.com
beb@kullmanlaw.com

**Attorneys for Appellee**

## CERTIFICATE OF INTERESTED PARTIES

Undersigned counsel, pursuant to Fifth Circuit Local Rule 28.1, certifies that the following persons and entities have an interest in the outcome of this appeal. This disclosure is made so that the Judges of this Court may evaluate possible recusal.

| **Plaintiffs-Appellants:** | **Counsel for Plaintiffs-Appellants:** |
|---|---|
| Jack Venton Venable | Kenneth D. St. Pé |
| | St. Pé Law |
| Brent K. Kemp | 311 West University Ave., Ste. A |
| | Lafayette, Louisiana 70506 |
| William Aguirre | Telephone: (337) 534-4043 |
| | Facsimile: (337) 534-8397 |
| Karl Drobish | |
| | -and- |
| Charles Walter Myers | |
| | Matthew S. Parmet |
| Joel Brent Story | Parmet PC |
| | 2 Greenway Plaza, Ste. 250 |
| | Houston, Texas 77046 |
| | Telephone: (713) 999-5228 |
| | |
| | -and- |
| | |
| | Aaron Johnson |
| | Fair Labor Law |
| | 214 E. Highland Mall Blvd., Ste. 401 |
| | Austin, Texas 78752 |
| | Telephone: (512) 277-3505 |

i

**Defendant-Appellee:**                    **Counsel for Defendant-Appellee:**

Smith International, Inc.                   Samuel Zurik, III
                                           Robert P. Lombardi
                                           Bryan Edward Bowdler
                                           The Kullman Firm, P.L.C.
                                           1100 Poydras Street, Ste. 1600
                                           New Orleans, Louisiana 70163
                                           Telephone: (504) 524-4162
                                           Facsimile: (504) 596-4189


**Persons/Entities Related to Defendant-Appellant:**

Schlumberger Holdings Corporation

Schlumberger Ltd.


                              */s/Bryan Edward Bowdler*
                              Bryan Edward Bowdler
                              Counsel for Appellee,
                              Smith International, Inc.

4855-5706-1512, v. 1

## STATEMENT REGARDING ORAL ARGUMENT

Appellee, Smith International, Inc. ("Smith"), requests oral argument to address any questions or issues raised by the Court.

4855-5706-1512, v. 1

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PARTIES.................................................... i

STATEMENT REGARDING ORAL ARGUMENT........................................... iii

TABLE OF CONTENTS................................................................................ iv

TABLE OF AUTHORITIES.......................................................................... vi

JURISDICTIONAL STATEMENT .................................................................1

STATEMENT OF THE ISSUES ....................................................................2

STATEMENT OF THE CASE .......................................................................3

   A.  FACTUAL BACKGROUND ................................................................3

      1.  APPELLANTS' COMPENSATION...............................................3

      2.  APPELLANTS' JOB DUTIES......................................................7

   B.  PROCEDURAL BACKGROUND .......................................................11

   C.  SMITH'S AND APPELLANTS' MOTIONS FOR SUMMARY JUDGMENT .............12

SUMMARY OF THE ARGUMENT.............................................................13

   A.  BECAUSE APPELLANTS WERE PAID A BI-WEEKLY SALARY, SMITH COULD PAY THEM ADDITIONAL COMPENSATION ON ANY BASIS, AND THE REASONABLE RELATIONSHIP TEST DOES NOT APPLY. ...........................................14

   B.  THE PLAIN TEXT OF 29 C.F.R. § 541.604 SHOWS THAT THE REASONABLE RELATIONSHIP TEST DOES NOT APPLY TO APPELLANTS' COMPENSATION......15

   C.  THE TENTH CIRCUIT RECENTLY HELD THAT THE REASONABLE RELATIONSHIP TEST DOES NOT APPLY TO A PAY PRACTICE IDENTICAL TO THE ONE HERE.................................................................16

   D.  THE DEPARTMENT OF LABOR EXCEEDED ITS AUTHORITY BY IMPOSING THE SALARY BASIS TEST AS PART OF THE FLSA'S EXEMPTIONS.....................17

ARGUMENT ...........................................................................................18

   A.  STANDARD OF REVIEW................................................................18

   B.  APPELLANTS CONCEDE THAT THEY SATISFIED THE WEEKLY SALARY AMOUNT, TOTAL ANNUAL COMPENSATION REQUIREMENT, AND THE DUTIES TEST OF THE HCE.................................................................19

**C. The FLSA's HCE Exemption and the Salary Basis Test.** ..................20

**D. Appellants Were Paid a Bi-Weekly Salary That Complied With § 602(a), and Their Receipt of Job Bonuses Does Not Void Application of § 602(a).** ...........................................................................................24

**E. The Plain Text of § 604 Shows That the Reasonable Relationship Test in § 604(b) Does Not Apply.** ...................................................27

1. **Section 604(a) Applies When an Employer Pays Its Employee a Salary and Additional Compensation, Like Smith Paid Appellants.** 28

2. **Section 604(b) Is Intended to Address Employees Whose Entire Compensation Is Calculated on an Hourly, Daily, or Shift Basis.** .37

**F. The Tenth Circuit Recently Examined the Exact Same Pay Practice at Issue Here and Held That the Reasonable Relationship Test Does Not Apply.** ..........................................................................41

**G. The DOL Exceeded Its Authority as set Forth in the FLSA by Requiring that an Exempt Employee Must be Paid on a "Salary Basis."** ...........................................................................................46

1. **The Court May Consider the Validity of the Salary Basis Test Although It Was Not Raised Below.** ...............................................**46**

2. **The Text of the FLSA Provides That It Is an Employee's Job Duties and Not How They Are Paid That Determines Exempt Status.** 47

**Conclusion** .....................................................................................51

**Certificate of Service** ..................................................................53

**Certificate of Compliance** .........................................................54

v

## TABLE OF AUTHORITIES

### Cases

*Adams v. All Coast, L.L.C.*,
   15 F.4th 365 (5th Cir. 2021) ..............................................................21

*Addison v. Holly Hill Fruit Prod.*,
   322 U.S. 607 (1944).........................................................................60

*Allen v. Highlands Hosp. Corp.*,
   545 F.3d 387 (5th Cir. 2008) ............................................................44

*Anani v. CVS RX Servs., Inc.*,
   730 F.3d 146 (2d Cir. 2013) ...................................................... 35, 36, 37

*Armendariz v. Pinkerton Tobacco Co.*,
   58 F.3d 144 (5th Cir. 1995) ..............................................................44

*Bell v. Callaway Partners, LLC*,
   394 F. App'x 632 (11th Cir. 2010).......................................................54

*Buckner v. Armour & Co.*,
   53 F. Supp. 1022 (N.D. Tex. 1942) .....................................................61

*Campos v. Steves & Sons, Inc.*,
   10 F.4th 515 (5th Cir. 2021) .............................................................20

*Corning Glass Works v. Brennan*,
   417 U.S. 188, 94 S. Ct. 2223, 2229, 41 L.Ed.2d 1 (1974) ..................................21

*Crown Castle Fiber, L.L.C. v. City of Pasadena, Texas*,
   76 F.4th 425 (5th Cir. Aug. 4, 2023) ....................................................20

*Dunkin v. Walker*,
   533 U.S. 167, 121 S. Ct. 2120, 150 L.Ed.2d 251 (2001) ....................................31

*Ekhlassi v. Nat'l Lloyd's Ins. Co.*,
   926 F.3d 130 (5th Cir. 2019) ...................................................... 18, 56, 57

*Encino Motorcars, LLC v. Navarro*,
   584 U.S. --, 138 S. Ct. 1134, 200 L.Ed.2d 433 (2018).......................................21

*Faludi v. U.S. Shale Sols., L.L.C.*,
   950 F.3d 269 (5th Cir. 2020) .............................................................22

*Gentry v. Hamilton-Ryker IT Sols., L.L.C.*,
No. 22-40219, 2023 WL 4704115 (5th Cir. July 24, 2023) (*per curiam*)..... 16, 39

*Gentry v. Hamilton-Ryker IT Sols., L.L.C.*,
No. 3:19-cv-00320, 2022 WL 658768 (S.D. Tex. Mar. 4, 2022), *report and recommendation adopted* 2022 WL 889276 (S.D. Tex. Mar. 25, 2022)  38, 40, 46

*Gentry v. Hamilton-Ryker IT Sols., L.L.C.*,
No. 3:19-cv-00320, 2022 WL 889276 (S.D. Tex. Mar. 25, 2022)......................39

*Guilbeau v. Schlumberger Tech. Corp.*,
No. SA-21-CV-00142-JKP, 2023 WL 4424075 (W.D. Tex. July 7, 2023).........39

*Hazen Paper Co. v. Biggins*,
507 U.S. 604, 113 S. Ct. 1701 (1993)....................................................................43

*Hebert v. FMC Techs., Inc.*,
No. 22-20562, 2023 WL 4105427 (5th Cir. Jun. 21, 2023) ........................ passim

*Helix Energy Sols. Grp., Inc. v. Hewitt*,
598 U.S. 39, 143 S. Ct. 677, 214 L. Ed. 2d 409 (2023) ............................... passim

*Hewitt v. Helix Energy Sols. Grp., Inc.*
15 F.4th 289 (5th Cir. 2021) (*en banc*)............................................... 35, 36, 37, 38

*Higgins v. Bayada Home Health Care, Inc.*,
62 F.4th 755 (3d Cir. 2023) ..................................................................................53

*Holtzclaw v. DSC Commc'ns Corp.*,
255 F.3d 254 (5th Cir. 2001) ................................................................................20

*Hughes v. Gulf Interstate Field Srvs., Inc.*,
878 F.3d 183 (6th Cir. 2017) ................................................................................37

*Jordan v. Helix Energy Sols. Grp., Inc.*,
346 F. Supp. 3d 890 (S.D. Tex. 2018)..................................................................21

*Lara v. Cinemark USA, Inc.*,
207 F.3d 783 (5th Cir. 2000) ................................................................................32

*Liberty Mut. Fire Ins. Co. v. Copart of Conn., Inc.*,
75 F.4th 522 (5th Cir. 2023) .................................................................................20

*Litz v. Saint Consulting Grp., Inc.*,
772 F.3d 1 (1st Cir. 2014)..............................................................................36, 37

*Litz v. Saint Consulting Grp., Inc.*,
  No. 11-1-693-GAO, 2013 WL 5205868 (D. Mass. Sept. 13, 2013) ............. 48, 49

*Montclair v. Ramsdell*,
  107 U.S. 147, 2 S. Ct. 391, 27 L. Ed. 431(1883)....................................................31

*Nevada v. U.S. Dept. of Labor*,
  275 F. Supp. 3d 795 (E.D. Tex. 2017)...................................................... 19, 58, 59

*New Orleans Depot Servs. Inc. v. Dir. Off. Of Worker's Comp. Programs*,
  718 F.3d 384 (5th Cir. 2013) (*en banc*) ................................................................56

*Norman v. Apache Corp.*,
  19 F.3d 1017 (5th Cir. 1994) ................................................................................20

*Procter & Gamble Co. v. Amway Corp.*,
  376 F.3d 496 (5th Cir. 2004) ................................................................................22

*Siplast, Inc. v. Emps. Mut. Cas. Co.*,
  23 F.4th 486 (5th Cir. 2022) (*per curiam*)...........................................................20

*Smith v. Ochsner Health Sys.*,
  956 F.3d 681 (5th Cir. 2020) ........................................................................ 23, 24

*TRW, Inc. v. Andrews*,
  543 U.S. 19, 122 S. Ct. 441, 449, 151 L. Ed. 2d 339 (2001) ...............................31

*United States v. Fafalios*,
  817 F.3d 155 (5th Cir. 2016) ........................................................................ 31, 32

*United States v. Fernandez*,
  48 F.4th 405 (5th Cir. 2022) ................................................................................22

*United States v. Menache*,
  348 U.S. 528, 75 S. Ct. 315, 99 L.Ed.2d 615 (1955) ...........................................31

*United States v. Molina – Gazca,*
  571 F.3d 470 (5th Cir. 2009) ................................................................................31

*Venable v. Schlumberger Ltd.*,
  No. 6:16-cv-00241, 2022 WL 895447 (W.D. La. Mar. 25, 2022) .......................55

*West Virginia v. E.P.A.*,
  142 S. Ct. 2587 (2022)................................................................................... 18, 61

viii

*Wilson v. Schlumberger Tech. Corp.*,
   80 F.4th 1170 (10th Cir. Sept. 11, 2023) ..................................................... passim

**Statutes**

29 U.S.C. § 213 ......................................................................................... 18, 48, 50

**Other Authorities**

*Defining and Delimiting the Exemptions for Executive, Administrative,*
   *Professional, Outside Sales and Computer Employees*,
   69 F.R. 22122-01, 2004 WL 865626 (Apr. 23, 2004) ................................... 40, 49

Opinion Letter, FLSA 2018-25,
   2018 WL 5925115 (Nov. 18, 2018) .............................................................. 39, 40

Opinion Letter, FLSA2020-2,
   2020 WL 122924 (Jan. 7, 2020) ................................................................... 40, 41

**Regulations**

29 C.F.R. § 541.601 ......................................................................................... 2, 20

29 C.F.R. § 541.602 ...................................................................................... passim

29 C.F.R. § 541.604 ...................................................................................... passim

29 C.F.R. § 778.112 ............................................................................................. 26

4855-5706-1512, v. 1

## JURISDICTIONAL STATEMENT

Appellants Jack Venton Venable, William Aguirre, Karl Drobish, Brent K. Kemp, Charles Walter Myers, and Joel Brent Story (collectively, the "Appellants") asserted claims in the district court under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* (the "FLSA"). Accordingly, the district court had subject matter jurisdiction over Appellants' claims pursuant to 28 U.S.C. § 1331.

This appeal is taken from the district court's final judgment, entered on March 25, 2022, granting summary judgment in favor of Smith and dismissing Appellants' claims with prejudice. ROA.2934–2935, ROA.3871, ROA.4878, ROA.5786, ROA.6727. Appellants filed their Notice of Appeal on April 21, 2022. ROA.2936–2837. The Court, therefore, has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

1

## STATEMENT OF THE ISSUES

1.      Whether the district correctly held that the reasonable relationship test contained in 29 C.F.R. § 541.604(b) does not apply to a "hybrid" compensation practice pursuant to which Appellants received a guaranteed salary that was not subject to reduction based on the quality or quantity of work performed as well as job bonuses.

2.      Whether the district court correctly held that Appellants were paid on a salary basis pursuant to 29 C.F.R. § 541.602(a).

3.      Whether the district court correctly held that Appellants were properly classified as exempt from overtime pursuant to the Highly Compensated Employee Exemption (the "HCE") found in 29 C.F.R. § 541.601.

## Statement of the Case

### A.    Factual Background

#### 1.    Appellants' Compensation.

Smith employed Appellants as DT&R Field Specialists or "Reamers" and paid them on a salary basis.  Appellants' compensation was composed of two (2) parts.  The first part was an annual salary, paid irrespective of hours worked, which Smith guaranteed and was not subject to reduction based on the quality or quantity of work.    ROA.673,  ROA.674,  ROA.717–718,  ROA.798–800,  ROA.3686, ROA.3734,    ROA.4613,    ROA.4685–4686,    ROA.5585,    ROA.5636–5637, ROA.6506, ROA.6569–6570.  Appellants received their salary bi-weekly regardless of whether they worked or not.  ROA.673, ROA.718, ROA.798–800, ROA.3686, ROA.3734,    ROA.4613,    ROA.4685–4686,    ROA.5585,    ROA.5636–5637, ROA.6506, ROA.6569–6570.

Second, in addition to their annual salary, Appellants received job bonuses for days that were billable to Smith's customers.  ROA.673, ROA.674, ROA.718, ROA.802,  ROA.3686,  ROA.3734–3735,  ROA.4613,  ROA.5585,  ROA.6506, ROA.6570–6571.  Appellants did not receive these job bonuses for every day they worked, rather, in order to receive a job bonus, Smith had to bill its customer for Appellants' work.  ROA.718, ROA.3734, ROA.4689–4690, ROA.6570–6571.  For example, on days Appellants spent in training courses, working at Smith's onshore

3

shop, and performing paperwork onshore, they were ineligible for a job bonus. ROA.718, ROA.3735, ROA.4689–4690, ROA.5639, ROA.6572–6573.

During the relevant time, Appellants' total annual compensation was considerably in excess of $100,000.00. ROA.686, ROA.719, ROA.687, ROA.804–807, ROA.3686, ROA.3735, ROA.4613, ROA.4691, ROA.4693, ROA.5585, ROA.5641–5643, ROA.6506, ROA.6574–6577. Further, their salaries significantly exceeded the minimum weekly amount required by the HCE.[1]    ROA.685, ROA.761–762, ROA.772, ROA.766–767, ROA.3686, ROA.3774–3776, ROA.4613, ROA.4781–4782, ROA.4784, ROA.5585, ROA.5689–5690, ROA.5696–5697, ROA.6506, ROA.6630–6631, ROA.6639–6640. In the district court and here, Appellants admit their total annual compensation and salaries exceeded the HCE's thresholds. Doc. No. 78 at 7 ("Appellants do not dispute that they received the minimum weekly and annual compensation to satisfy the HCE exemption's minimum income requirements"). Specifically, Appellants' compensation was as follows:

---

[1]    During the relevant time period, the income thresholds for the HCE were $455.00 per week in salary (or $23,660.00 annually) and total annual income of $100,000.00.

4

*Jack V. Venable:*

| Year | Annual Salary | Total Annual Compensation |
|---|---|---|
| 2013 | $56,700.00 (Feb. 2013–Aug. 2013) ROA.685, ROA.761–762, ROA.772.<br><br>$58,450.00 (Aug. 2013–Dec. 2013) ROA.685, ROA.761–762, ROA.772. | $300,060.64 ROA.686, ROA.719. |
| 2014 | $58,450.00 (Jan. 2014–Aug. 2014)<br><br>$60,250.00 (Aug. 2014–Dec. 2014) ROA.685, ROA.761–762, ROA.772. | $319,264.42 ROA.686, ROA.719. |
| 2015 (Jan.-Sept. 25th) | $60,250.00 ROA.685, ROA.761–762, ROA.772. | $168,787.67 ROA.686, ROA.719. |

*Brent Kemp:*

| Year | Annual Salary | Total Annual Compensation |
|---|---|---|
| 2014 | $54,700.00 ROA.687, ROA.761–762, ROA.766–767. | $214,044.61 ROA.687, ROA.804. |
| 2015 | | $208,050.10 ROA.687, ROA.805–806. |
| 2016 | | $143,600.10 ROA.687, ROA.806. |
| 2017 | | $149,196.25 ROA.687, ROA.807. |

| 2018 | | $165,732.12<br>ROA.687, ROA.807. |

*William Aguirre:*

| Year | Annual Salary | Total Annual Compensation |
|------|---------------|---------------------------|
| 2013 | $56,600.00 (Jan. –Aug.)<br>ROA.3686, ROA.3774–3776.<br><br>$58,300.00 (Aug. –Dec.)<br>ROA.3686, ROA.3774–3776. | $253,599.60<br>ROA.3686, ROA.3735. |
| 2014 | $58,300.00 (Jan.–Aug.)<br>ROA.3686, ROA.3774–3776.<br><br>$60,050.00 (Aug.–Dec.)<br>ROA.3686, ROA.3774–3776. | $279,323.54<br>ROA.3686, ROA.3735. |
| 2015 (Jan.-Dec. 4th) | $60,050.00<br>ROA.3686, ROA.3774–3776. | $266,868.13<br>ROA.3686, ROA.3735. |

*Karl Drobish:*

| Year | Annual Salary | Total Annual Compensation |
|------|---------------|---------------------------|
| 2014 | $68,650.00<br>ROA.4613, ROA.4781–4782, ROA.4784. | $164,880.31<br>ROA.4613, ROA.4691. |
| 2015 (Jan.-Sept. 25th) | | $142,644.73<br>ROA.4613, ROA.4693. |

6

*Charles Myers:*

| Year | Annual Salary | Total Annual Compensation |
|------|---------------|---------------------------|
| 2014 | $52,400.00 ROA.5585, ROA.5689–5690, ROA.5696–5697. | $282,457.88 ROA.5585, ROA.5641. |
| 2015 (Jan.-Sept.) | | $145,526.84 ROA.5585, ROA.5642–5643. |

*Joel Story:*

| Year | Annual Salary | Total Annual Compensation |
|------|---------------|---------------------------|
| 2014 | $52,600.00 ROA.6506, ROA.6630-6631, ROA.6639-6640. | $348,427.95 ROA.6506, ROA.6574. |
| 2015 | | $211,950.08 ROA.6506, ROA.6575–ROA.6576. |
| 2016 (until October 6th) | | $144,349.27 ROA.6506, ROA.6576–6577. |

## 2.    APPELLANTS' JOB DUTIES

As Reamers, Appellants' primary duty was to consult and supervise Smith's customers when they were handling or operating Smith's underreaming tools. ROA.675,    ROA.815–816,    ROA.846,    ROA.848,    ROA.3687,    ROA.3739, ROA.3744,    ROA.3746,    ROA.3798,    ROA.3824,    ROA.4616,    ROA.4740, ROA.5586,    ROA.5679,    ROA.6507,    ROA.6590.    This included supervising members of the rig crew as they attached and removed the reamer tool to/from the

7

drill string, communicating with and instructing the Driller (the rig crew supervisor who operated the controls for the drill string) on how to properly operate the underreaming tool, and ensuring that the Driller operated the tool within the appropriate parameters and did not operate the underreaming tool in a manner that would damage the well that Smith's customer was drilling. ROA.675, ROA.728, ROA.773, ROA.814–819, ROA.846, ROA.848–849, ROA.3687–3691, ROA.3739–3740, ROA.3744, ROA.3748, ROA.4616–4620, ROA.4740–4750, ROA.5586–5588, ROA.5656–5681, ROA.6507, ROA.6589–6615. Importantly, Appellants did not operate the underreaming tool; the Driller, who worked as part of the rig crew, was the individual at the controls and operating the drill string. ROA.676, ROA.727–728, ROA.818–819, ROA.848, ROA.3687, ROA.3739, ROA.4616, ROA.4731, ROA.5586, ROA.5674. In fact, Appellants (and other Reamers) were not allowed to operate the rig's equipment. ROA.848, ROA.3687, ROA.3739, ROA.5586, ROA.5674.

The main job of a Reamer while on an oil rig is assisting and advising Smith's client in the drilling operations, making sure that the Driller is running the tool correctly, and supporting the customer's use of the underreaming tool. ROA.675–676, ROA.727–729, ROA.733, ROA.814–818, ROA.846, ROA.849, ROA.3687, ROA.3739, ROA.3744, ROA.3746, ROA.3798, ROA.3821-22, ROA.4616–4617, ROA.4732, ROA.4740, ROA.5587, ROA.5666–5667,

8

ROA.6507, ROA.6604.   Appellants constantly monitored the various drilling parameters and provided instructions or recommendations to the Driller on adjustments to the drilling parameters to maximize the operation of the underreaming.   ROA.678, ROA.725, ROA.732–733, ROA.815, ROA.830, ROA.837, ROA.846, ROA.849, ROA.3687, ROA.3740, ROA.3814, ROA.4616, ROA.4618, ROA.4741–4742, ROA.4747–4748, ROA.4767, ROA.5587, ROA.5666–5667, ROA.6507, ROA.6599.

When adjustments were needed, Appellants determined the proper adjustments to the applicable drilling parameters based on their experience and instructed the Driller on what actions to take, and they often had to do so quickly to respond to unforeseen situations.   ROA.678, ROA.725, ROA.732–733, ROA.815, ROA.830, ROA.837, ROA.3690–91, ROA.3747, ROA.3749, ROA.3752, ROA.4616, ROA.4718-4719, ROA.4742, ROA.4748–4749, ROA.5587, ROA.5666–5667.   There were no manuals or step-by-step guides that Appellants followed, or that dictated the specific changes to the drilling parameters that Appellants would instruct or advise the Driller to make.   ROA.679, ROA.734, ROA.849, ROA.3824, ROA.5587, ROA.5666–5667.   With respect to providing instructions or advice on adjusting the drilling parameters, Appellants analyzed the relevant data and used their judgment and discretion to determine what adjustments

9

were necessary.   ROA.679, ROA.734, ROA.3690–91, ROA.3747, ROA.3749, ROA.3752, ROA.4616, ROA.4742, ROA.5587, ROA.5666–5667.

Appellants' primary job duties were non-manual in nature.  ROA.3687–3691, ROA.3743, ROA.3744–45, ROA.3801, ROA.4616–4620, ROA.4739–4769, ROA.5586–5588, ROA.5656–5679, ROA.6507–6511, ROA.6600–6601.  As noted, Appellants were required to monitor the various drilling parameters and provide instructions or recommendations to the Driller on adjustments to the drilling parameters to maximize the operation of the underreaming tool.   ROA.678, ROA.725, ROA.732–733, ROA.815, ROA.830, ROA.837, ROA.846, ROA.849, ROA.3687, ROA.3740, ROA.4616, ROA.4618, ROA.4741–4742, ROA.4747–4748, ROA.4767, ROA.5587, ROA.5666–5667, ROA.6507, ROA.6599. Monitoring data and providing direction and/or advice is not manual labor.

Smith's clients for whom Appellants provided services were primarily oil and gas exploration companies.   ROA.835, ROA.3685, ROA.3739, ROA.5588, ROA.5675, ROA.6511, ROA.6613.  The business goal of Smith's clients is to produce either oil or natural gas.  ROA.3685, ROA.3739, ROA.5588, ROA.5675, ROA.6511, ROA.6614.  Appellants, as Reamers, provided services to Smith's clients' operations to drill a well that would produce oil and/or natural gas. ROA.3685, ROA.3739, ROA.5588, ROA.5675, ROA.6511, ROA.6614.

Although Appellants argued in the district court that their job duties did not qualify them as exempt, they abandoned that argument on appeal. *See generally* Doc. No. 78 (only arguing that Appellants' compensation does not meet the salary basis test).

## B.    PROCEDURAL BACKGROUND

On February 16, 2016, Appellants Jack Venton Venable and William Aguirre filed their collective action complaint asserting claims under the FLSA and alleging that they were owed but did not receive overtime compensation. Smith denied the allegations in the complaint and asserted, among other things, that Appellants were properly classified as exempt pursuant to the FLSA's exemptions, including the highly compensated employee exemption (the "HCE").

Appellants Venable and Aguirre moved the district court to conditionally certify the case as a collective action pursuant to 29 U.S.C. § 216(b). ROA.86–108. Smith opposed the motion for conditional certification. ROA.128–160. On June 5, 2017, the magistrate judge issued a report and recommendation recommending that the motion for conditional certification be granted in part and denied in part. ROA.277–296. The report and recommendation was adopted by the district court. ROA.337–338.

Concomitantly, Smith filed its motion to dismiss collective action claims or, alternatively, for partial summary judgment with respect to Appellant Aguirre (the

"Motion for Partial Summary Judgment"), asserting that Aguirre was ineligible to participate in a FLSA collective action. ROA.207–228. The Magistrate Judge issued a second report and recommendation addressing the Motion for Partial Summary Judgment, recommending it be granted in part and denied in part and severing Aguirre's claims into a separate lawsuit. ROA.317–326. This report and recommendation was also adopted by the district court. ROA.341–342.

After notice was issued to the putative collective action members, a total of four (4) individuals submitted consent forms to join the case as plaintiffs. ROA.353-356; ROA.4881–4884. Later, on the Parties' joint motion, ROA.424–426, the district court severed three of the four opt-in Appellants' claims into separate cases. ROA.428. The district court later consolidated the various individual cases for discovery purposes only. ROA.438–439; ROA.440–441.

## C.    SMITH'S AND APPELLANTS' MOTIONS FOR SUMMARY JUDGMENT

This appeal focuses on the district court's ruling on multiple motions for summary judgment filed by both Appellants and Smith. ROA.2896–2914.

In its Memorandum Ruling on the motions for summary judgment, the district court (1) granted Smith's motions for summary judgment on the Appellants' claims, (2) denied Appellants' motion for summary judgment regarding Smith's exemption defenses, and (3) denied as moot both Smith and Appellant's motions for summary judgment on the issues of willfulness and good faith. ROA.2915–2933.

12

The district court held that Appellants' compensation levels satisfied the minimum amounts required by the HCE.  ROA.2919–2922.  The district court also held that because Appellants' compensation included pay calculated on a weekly or less frequent basis plus additional compensation, Smith could provide additional compensation paid on any basis, and the reasonable relationship test did not apply. ROA.2924–2925.  Finally, the district court held that Appellants regularly and customarily performed at least one exempt administrative duty.  ROA.2925–2932.

Appellants then appealed the district court's order granting summary judgment in favor of Smith and dismissing Appellants' claims with prejudice. ROA.2936.  On appeal, Appellants have abandoned their contentions that they were merely manual workers, and it is therefore established that they meet the duties requirements of the HCE, which is all that is required by 29 U.S.C. § 213(a)(1) to meet the exemption.

## SUMMARY OF THE ARGUMENT

Smith paid Appellants on a salary basis as required by the FLSA and its regulations, and the district court correctly granted Smith's motions for summary judgment and entered judgment in its favor.

13

**A.    BECAUSE APPELLANTS WERE PAID A BI-WEEKLY SALARY, SMITH COULD PAY THEM ADDITIONAL COMPENSATION ON ANY BASIS, AND THE REASONABLE RELATIONSHIP TEST DOES NOT APPLY.**

The Supreme Court held in *Helix Energy Sols. Grp., Inc. v. Hewitt*, that 29 C.F.R. § 541.602(a) ("§ 602(a)) and 29 C.F.R. § 541.604(b) ("§ 604(b)") provide for independent, non-overlapping paths to satisfy the salary basis requirement, and "[a] pay scheme meeting § 602(a) and the HCE's other requirements does not also have to meet § 604(b) to make a worker exempt." *Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. 39, 50 n.3, 143 S. Ct. 677, 214 L. Ed. 2d 409 (2023).

Under § 602(a), the salary basis test is satisfied when an employee "regularly receives each pay period on a weekly or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which is not subject to reduction because of variations in the quality or quantity of work performed." 29 C.F.R. § 541.602(a). The Supreme Court specifically noted that § 602(a) allows for the payment of additional compensation. *Helix Energy*, 598 U.S. at 46 ("The rule thus ensures that the employee will at least part of his compensation through a preset weekly . . . salary . . . .").

Appellants erroneously argue that § 604(b) applies. Section 604(b) provides *an alternative* route for those employees who are not paid a true salary to satisfy the salary basis requirement. Under § 604(b), an employee still may be paid on a salary basis subject to certain conditions even though their base compensation is

calculated on an hourly, daily, or shift basis. 29 C.F.R. § 541.604(b). Section 604(b) requires that the employer guarantee a weekly payment of at least the minimum required for the exemptions and that a reasonable relationship exists between the weekly guarantee and the employee's actual earnings. *Id.*

Section 604(a) and § 604(b) are gateways to the HCE, and they are "independent" routes to satisfy the salary basis requirement. *Helix Energy*, 598 U.S. at 50 n.3. As the Supreme Court stated in *Helix Energy*, "[a] pay scheme meeting § 602(a) and the HCE's other requirements does not also have to meet § 604(b) to make a worker exempt." *Id.*

There is no dispute that Appellants were paid a bi-weekly salary that did not change based on variations in the quality or quantity of the work performed, including weeks in which no work was performed at all. Thus, because Appellants' compensation satisfies § 602(a), they were paid on a salary basis, and § 604(b) is of no import.

## B. THE PLAIN TEXT OF 29 C.F.R. § 541.604 SHOWS THAT THE REASONABLE RELATIONSHIP TEST DOES NOT APPLY TO APPELLANTS' COMPENSATION.

The relevant provision of the regulation that addresses the payment of additional compensation and paying exempt employees on an hourly, daily, or shift basis is 29 C.F.R. § 541.604 ("§ 604"), which includes two subsections. The first addresses when an employee is paid a true salary pursuant to § 602(a), and in such instances, the employer can provide additional compensation on any basis,

15

including time-based payments.  29 C.F.R. § 541.604(a).  This Court reached this conclusion in *Hebert v. FMC Techs., Inc.*, No. 22-20562, 2023 WL 4105427 (5th Cir. Jun. 21, 2023), holding that the reasonable relationship test does not apply when an employee is paid a salary plus additional compensation paid on a daily basis.

On the other hand, § 604(b) applies when an employee's base compensation is calculated by reference to an hourly, daily, or shift basis.  29 C.F.R. § 541.604(b).  Recently, in *Gentry v. Hamilton-Ryker IT Sols., L.L.C.*, No. 22-40219, 2023 WL 4704115 (5th Cir. July 24, 2023) (*per curiam*), the Court addressed those specific facts and applied the reasonable relationship test where an employee's base compensation was determined by reference to an hourly rate.

The comparison between *Hebert* and *Gentry* shows the difference between § 604(a) and § 604(b) and when each applies.

C.  **THE TENTH CIRCUIT RECENTLY HELD THAT THE REASONABLE RELATIONSHIP TEST DOES NOT APPLY TO A PAY PRACTICE IDENTICAL TO THE ONE HERE.**

In *Wilson v. Schlumberger Tech. Corp.*, 80 F.4th 1170 (10th Cir. 2023), the Tenth Circuit addressed the same question as presented here:  whether § 604(b)'s reasonable relationship test applies to a pay practice where the employee receives a guaranteed salary and bonuses for days billed for working on customers' well sites.

16

*Id.*.  The Tenth Circuit held that the reasonable relationship test does not apply in that situation.

The Tenth Circuit analyzed the text of § 604 and concluded that, as argued above, § 604(a) applies when an employee is paid a base, guaranteed salary and § 604(b), and the reasonable relationship test applies only when all of an employee's total compensation is computed on an hourly, daily, or shift rate.

## D.    THE DEPARTMENT OF LABOR EXCEEDED ITS AUTHORITY BY IMPOSING THE SALARY BASIS TEST AS PART OF THE FLSA'S EXEMPTIONS.

This appeal presents a pure legal issue to the Court, considering that Appellants do not challenge the fact that they satisfied the salary amount, total annual income, and job duties requirements of the HCE.  As such, the Court has discretion to address arguments made for the first time on appeal.  *Ekhlassi v. Nat'l Lloyd's Ins. Co.*, 926 F.3d 130, 138 (5th Cir. 2019).  The Court should exercise its discretion here to address whether the Department of Labor ("DOL") exceeded its authority by imposing the salary basis test.

The DOL only has those powers provided by Congress.  *West Virginia v. E.P.A.*, 142 S. Ct. 2587, 2609 (2022).  The FLSA provides that the DOL may define and delimit the executive, administrative, and professional exemptions; however, nothing in the text of the FLSA permits the DOL to use salary as a determinative factor of whether an exemption applies.  *Nevada v. U.S. Dept. of Labor*, 275 F. Supp. 3d 795, 804 (E.D. Tex. 2017).  Rather, the FLSA speaks to a person's job

17

duties, not salary. *Id.* At the time the FLSA was adopted, the terms "executive, administrative, and professional capacity" referred to a person's job duties. *Id.*

This is supported by the fact that in the FLSA, when Congress intended that a compensation component be included into an exemption test, they did so in the statute. *See* 29 U.S.C. § 213(a)(19) (exempting baseball players who are paid a specific weekly salary); 29 U.S.C. § 213(a)(17) (exempting certain computer professionals when paid a specific hourly rate); 29 U.S.C. § 213(b)(11) (exempting delivery drivers paid by tip rate or other delivery payment plan); 29 U.S.C. § 213(b)(24) (exempting educational workers paid on a cash basis at a set annual rate).

## ARGUMENT

### A.    STANDARD OF REVIEW

On appeal, the Court reviews a summary judgment *de novo*. *Crown Castle Fiber, L.L.C. v. City of Pasadena, Texas*, 76 F.4th 425, 432 (5th Cir. 2023) (citing *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994)). Summary judgment is proper when "there is no genuine issue of material fact and the party is entitled to prevail as a matter of law." *Liberty Mut. Fire Ins. Co. v. Copart of Conn., Inc.*, 75 F.4th 522, 528 (5th Cir. 2023) (quoting *Siplast, Inc. v. Emps. Mut. Cas. Co.*, 23 F.4th 486, 492 (5th Cir. 2022) (*per curiam*)). The Court "may affirm a summary judgment on any ground supported by the record, even if it is different from that

18

relied on by the district court." *Campos v. Steves & Sons, Inc.*, 10 F.4th 515, 520 (5th Cir. 2021) (quoting *Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 258 (5th Cir. 2001)).

"The general rule is that the application of an exemption under the FLSA is a matter of affirmative defense on which the employer has the burden of proof." *Jordan v. Helix Energy Sols. Grp., Inc.*, 346 F. Supp. 3d 890, 897 (S.D. Tex. 2018) (quoting *Corning Glass Works v. Brennan*, 417 U.S. 188, 94 S. Ct. 2223, 2229, 41 L.Ed.2d 1 (1974)). With respect to the FLSA's exemptions, the Supreme Court has stated that "there is no reason to give [them] anything other than a fair (rather than a 'narrow') interpretation." *Encino Motorcars, LLC v. Navarro*, 584 U.S. --, 138 S. Ct. 1134, 1142, 200 L.Ed.2d 433 (2018); *Adams v. All Coast, L.L.C.*, 15 F.4th 365, 368–69 (5th Cir. 2021); *Faludi v. U.S. Shale Sols., L.L.C.*, 950 F.3d 269, 273 (5th Cir. 2020).

Essentially, Appellants argue that although they meet all the requirements of the HCE, the Court should violate *Encino*'s holding and the controlling law in order to entitle them, after the fact, to overtime for which the parties never bargained.

**B.    APPELLANTS CONCEDE THAT THEY SATISFIED THE WEEKLY SALARY AMOUNT, TOTAL ANNUAL COMPENSATION REQUIREMENT, AND THE DUTIES TEST OF THE HCE.**

In their brief, Appellants focus all their attention on the argument of whether the reasonable relationship test applies. Appellants did not challenge the district

court's conclusion that they were paid a bi-weekly salary, satisfied the weekly salary amount, the total annual compensation amount, and the duties test of the HCE.

Failing to argue an issue in a party's opening brief constitutes a waiver of that argument. *United States v. Fernandez*, 48 F.4th 405, 412 (5th Cir. 2022) (quoting *Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 n.1 (5th Cir. 2004)). Accordingly, Appellants concede that the amount of their salaries, their total annual compensation, and day-to-day job duties satisfied the duties test of the HCE, and the issues on appeal are limited to whether the reasonable relationship test applies to the method of Appellants' compensation.[2]

## C.     THE FLSA'S HCE EXEMPTION AND THE SALARY BASIS TEST.

An employee meets the pay requirements of the HCE if their total annual compensation is at least $100,000.00 and includes at least $455.00 per week paid on a salary or fee basis. 29 C.F.R. § 541.601; *Smith v. Ochsner Health Sys.*, 956 F.3d 681, 684 (5th Cir. 2020). "In crafting the highly compensated employee exemption,

---

[2]     Appellants try to frame their argument as a salary basis argument, but it is not. Section 602(a) defines being paid on a salary basis as when an employee "regularly receives each pay period on a weekly or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which is not subject to reduction because of variations in the quality or quantity of work performed." 29 C.F.R. § 541.602(a). Appellants were clearly being paid on this basis. 29 C.F.R. § 541.602(a). Section 604(b), per *Helix Energy*, defines a separate, non-overlapping method to satisfy the salary basis requirement for employees paid a day rate with a weekly guarantee.

the [DOL] made it easier on both employers and courts." *Smith*, 956 F.3d at 688. The employee's "level of compensation is the principal consideration." *Id.*

The FLSA's implementing regulations define what it means to be paid on a "salary basis." Per the regulations:

> An employee will be considered to be paid on a "salary basis" within the meaning of this part if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed.

29 C.F.R. § 541.602(a).[3]

Recently, the Supreme Court addressed the salary basis test and the applicable FLSA regulations in *Helix Energy*. Section 602(a), according to the Supreme Court, "ensures that the employee will get at least part of his compensation through a preset weekly (or less frequent) salary, not subject to reduction because of exactly how many days he worked." *Helix Energy*, 598 U.S. at 46.

For those individuals who cannot meet the requirements of § 602(a), the regulations provide for a second path for employees to be considered paid on a "salary basis." This alternative method is for those exempt employees paid on an hourly, daily, or shift basis, and the regulations provide as follows:

---

[3]   As discussed in more detail *supra*, Appellants clearly meet this requirement.

21

An exempt employee's earnings may be computed on an hourly, daily or a shift basis, without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly required amount paid on a salary basis regardless of the number of hours, days or shifts worked, and a reasonable relationship exists between the guaranteed amount and the amount actually earned.

29 C.F.R. § 541.604(b).

This section is "all about daily, hourly, or shift rates" and "speaks directly to when daily and hourly rate are '[ ] consistent with the salary basis concept.'" *Helix Energy*, 598 U.S. at 55, 56 (alteration in original). The regulation states "an employer may base an employee's pay on an hourly, daily, or shift rate without 'violating the salary basis requirement' or 'losing the [bona fide executive] exemption' so long as two conditions are met." *Id.* at 46–47. Those conditions are that the employee is guaranteed earnings at or above the requisite weekly amount and a reasonable relationship exists between the guaranteed amount and the employee's typical weekly earnings. *Id.* Thus, § 604(b) creates a "compensation system functioning much *like* a true salary." *Id.* (emphasis added).

The Supreme Court defined these as two separate and distinct tracks for satisfying the salary basis requirement for the FLSA's white-collar exemptions: one track under § 602(a) for employees paid a "true salary"; one track under § 604(b) for employees who are paid solely on an hourly, daily, or shift basis. The Supreme Court went on to state that if § 602(a) is satisfied, the inquiry ends, and

22

there is no need to also satisfy § 604(b): "In setting out the pertinent regulatory scheme, we show that § 602(a) and § 604(b) are *independent* routes for satisfying the HCE's rule's salary-basis component. A pay scheme meeting § 602(a) and the HCE's other requirements does not also have to meet § 604(b) to make a worker exempt." *Id.* at 50 n.3 (emphasis added).

Appellants also argue that § 602(a) applies when and only when an employee receives nothing but a weekly or less frequent salary. In other words, and according to Appellants, if there is any additional compensation over and above the salary, § 602(a) no longer applies. However, *Helix Energy* forecloses such a reading. When discussing the meaning of the term "basis," the Supreme Court noted that its definition of "basis" works hand in hand with other portions of the regulation. *Id.* at 53–54. The Supreme Court specifically noted that § 604(a) permits the payment of additional compensation on "any basis." *Id.* The only logical reading of *Helix Energy* is that in order to satisfy § 602(a), part of an employee's compensation must be paid an amount measured by a weekly or less frequent time period. *See id.* at 51–54. Even still, Appellant's argument is wholly contrary to the regulations' textual directive, which again provides: "An employee will be considered to be paid on a 'salary basis' within the meaning of this part if the employee receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting *all or part of the employee's compensation* . . . ." 29 C.F.R. § 541.604(a) (emphasis

23

added).

**D.  APPELLANTS WERE PAID A BI-WEEKLY SALARY THAT COMPLIED WITH § 602(A), AND THEIR RECEIPT OF JOB BONUSES DOES NOT VOID APPLICATION OF § 602(A).**

As noted, § 602(a) requires that to be paid on a salary basis, an employee must receive "each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed."  29 C.F.R. § 541.602(a).  Per the Supreme Court in *Helix Energy*, the word "basis" means "the unit of time used to calculate pay" and, to be paid on a salary basis, "that unit must be a week or less frequent measure."  *Helix Energy*, 598 U.S. at 52.  The Supreme Court went on to cite the Webster's New International Dictionary definition of basis: "as the 'foundation' of a thing."  *Id.*

Considering these definitions as laid out by the Supreme Court, the weekly or less frequent "basis" requirement applies to an employee's base pay—not their additional compensation.  *Hebert v. FMC Techs., Inc.*, No. 22-20562, 2023 WL 4105427, at *2 n.5 (5th Cir. June 21, 2023) (holding that § 604(b) "only applies to employees whose earnings are computed on an hourly, daily, or shift basis," and that § 604(b) "is inapplicable because the record shows [the plaintiff] was paid a guaranteed bi-weekly salary."); *Wilson v. Schlumberger Tech. Corp.*, 80 F.4th 1170 (10th Cir. 2023) (holding that reasonable relationship test does not apply to

24

individuals paid a bi-weekly salary plus additional compensation based on a daily amount).

Here, there is no question that Appellants were paid a salary that complies with the dictates of § 602(a). Each Appellant was paid a bi-weekly salary that did not change based on the quality or quantity of work, whether they worked or not. Further, their salaries were more than double the minimum required amount ($455.00 per week) required by 29 C.F.R. § 541.600. ROA.685, ROA.761–762, ROA.772, ROA.766–767, ROA.3686, ROA.3774–3776, ROA.4613, ROA.4781–4782, ROA.4784, ROA.5585, ROA.5689–5690, ROA.5696–5697, ROA.6506, ROA.6630–6631, ROA.6639–6640. Smith paid Appellants their salary bi-weekly regardless of the number of hours they worked, even if they performed no work. ROA.673, ROA.674, ROA.717–718, ROA.798–800, ROA.3686, ROA.3734, ROA.4613, ROA.4685–4686, ROA.5585, ROA.5636–5637, ROA.6506, ROA.6569–6570. Additionally, Smith did not take any improper deductions from their base salaries. ROA.717–718, ROA.799, ROA.4685, ROA.5636, ROA.6569–6570.

Further, Appellants' position ignores the actual language of § 602(a), which provides that an employee's salary needs only be a portion of the employee's compensation. Section 602(a) recognizes that an exempt employee's total compensation may vary week-to-week, and what is required to satisfy the salary

25

basis requirement is that an employee receives "a predetermined amount constituting all *or part of the employee's compensation.*"    29 C.F.R. § 541.602(a) (emphasis added).

Appellants argue that they were not paid on a salary basis because of the job bonus *portion* of their compensation, which means that they were truly paid a "day rate."   A day rate, as defined by the regulations, is a flat sum for a day's work regardless of the hours actually worked.  29 C.F.R. § 778.112.  It also anticipates, and *Helix Energy* confirms, that there will be no other compensation.  *Id.*

There are fundamental differences between the bonuses Appellants received and a day rate as defined by the FLSA's regulations.  The job bonus portion of Appellant's compensation was not an amount they received for every day they worked, *i.e.*, a day rate.  Rather, they were eligible to receive a job bonus only for days that were billed by Smith to its customers.  ROA.673, ROA.674, ROA.718, ROA.802,  ROA.3686,  ROA.3734–3735,  ROA.4613,  ROA.5585,  ROA.6506, ROA.6570–6571.  Appellants admit the job bonus was not payment for every day they worked.  Indeed, Appellants testified that there were days when they worked but  did  not  receive  a  job  bonus.    ROA.718, ROA.3735, ROA.4689–4690, ROA.5639, ROA.6572–6573.   The defining characteristic of the job bonus component of Appellants' compensation is that they received a job bonus for days that Smith was able to bill its customers, not any day they worked.

26

Here, Appellants received a salary, the amount of which was measured by reference to a week or less frequent basis and, therefore, § 602(a) is satisfied. This conclusion is material as will be discussed, *infra*.

**E.    THE PLAIN TEXT OF § 604 SHOWS THAT THE REASONABLE RELATIONSHIP TEST IN § 604(b) DOES NOT APPLY.**

It is "a cardinal principle of statutory construction" that "a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *Dunkin v. Walker*, 533 U.S. 167, 174, 121 S. Ct. 2120, 150 L.Ed.2d 251 (2001) (internal quotation marks omitted).; *see also United States v. Menache*, 348 U.S. 528, 538-539, 75 S. Ct. 315, 99 L.Ed.2d 615 (1955) ("it is our duty 'to give effect, if possible, to every clause and word of a statute'") (quoting *Montclair v. Ramsdell*, 107 U.S. 147, 152, 2 S. Ct. 391, 27 L. Ed. 431(1883)); *TRW, Inc. v. Andrews*, 543 U.S. 19, 31, 122 S. Ct. 441, 449, 151 L. Ed. 2d 339 (2001); *United States v. Molina – Gazca,* 571 F.3d 470, 473 (5th Cir. 2009).

Courts interpret regulations in the same manner as statutes. *See United States v. Fafalios*, 817 F.3d 155, 159 (5th Cir. 2016). "Furthermore, the court 'consider[s] the regulation as a whole, with the assumption that the [agency at issue] intended each of the regulation's terms to convey meaning.'" *Id.* (citing *Lara v. Cinemark USA, Inc.*, 207 F.3d 783, 787 (5th Cir. 2000)). Accordingly, § 541.604 should be

27

interpreted according to the plain meaning of its text. Under that interpretation, § 604(a) governs this issue.

The two subsections of § 604 cover two distinct compensation practices, and there is no overlap. Section 604(a) covers situations where an employee is paid a salary as defined in § 602(a) and, per § 604(a), additional compensation may be paid on any basis. 29 C.F.R. § 541.604(a). Said differently, where an employee is paid a base salary, it does not matter how any additional compensation is computed, and the reasonable relationship test does not apply.

Subsection (b) applies when an employer computes an exempt employee's earnings by reference to a unit of time (*i.e.,* hourly, daily, or by shift) that is less than a week. For the employee to be paid on a salary basis, the employer must provide a weekly guarantee that the employee will receive if the computation of the employee's earnings on the hourly, daily, or shift basis is less than the guaranteed amount, and the guarantee bears a reasonable relationship to the amount actually earned.

### 1.    SECTION 604(a) APPLIES WHEN AN EMPLOYER PAYS ITS EMPLOYEE A SALARY AND ADDITIONAL COMPENSATION, LIKE SMITH PAID APPELLANTS.

Section 604(a) is straightforward and clear: an employer may pay an exempt employee additional compensation over and above the employee's salary without violating the salary basis requirement. *Id*. This additional compensation can be

28

paid on "any basis," including based on units of time. *Id.* ("Such additional compensation may be paid on any basis (e.g., flat sum, bonus payment, straight-time hourly amount, time and one-half or any other basis), and may include paid time off.").

**a)** **THIS COURT HAS HELD THAT § 604(a) APPLIES WHEN AN EMPLOYEE RECEIVES A SALARY PLUS ADDITIONAL TIME-BASED COMPENSATION.**

In *Hebert v. FMC Techs., Inc.*, No. 22-20562, 2023 WL 4105427 (5th Cir. Jun. 21, 2023), the Court held that § 604(a) applies when an employee is paid a salary plus additional day-based compensation. In *Hebert*, the plaintiff worked as an installation engineer and received a salary that did not change based on the amount of time worked and a "field service premium" for days working at an offshore location. *Id.* at *1. The district court granted summary judgment in favor of the defendant, and the plaintiff appealed. *Id.* On appeal, this Court analyzed whether the plaintiff was paid on a salary basis and held that he was. *Id.* at *2. The plaintiff argued that the Supreme Court's decision in *Helix Energy* required that the defendant satisfy the reasonable relationship test for the salary basis test to be satisfied. *Id.* at *2 n.5. The Court rejected the plaintiff's argument, stating that § 604(b) "only applies to employees whose earnings are computed on an hourly, daily, or shift basis" and it held that § 604(b) "is inapplicable because the record shows [the plaintiff] was paid a guaranteed bi-weekly salary." *Id.*

29

Appellants attempt to distinguish that decision, arguing that because the Court in *Hebert* did not address whether the additional compensation was a "day rate," somehow it is inapplicable. The problem with Appellants' argument is that in *Hebert,* the Court specifically considered and rejected that argument. The plaintiff argued that his base pay was a day rate, which meant he was not paid on a salary basis. *See id.* at *2. The Court rejected that argument in a footnote. *Id.* at 2 n.5. Further, nowhere in its analysis does the Fifth Circuit say that the nature of the additional compensation mattered. *Id.* According to the Fifth Circuit, the reasonable relationship test did not apply because § 604(b) "only applies to employees whose earnings are computed on an hourly, daily, or shift basis." *Id.* In other words, it does not apply when an employee is paid a salary.

This conclusion is also supported by this Court's *en banc* decision in *Hewitt v. Helix Energy Sols. Grp., Inc.* 15 F.4th 289 (5th Cir. 2021) (*en banc*). In its decision, the Fifth Circuit analyzed whether its decision created a circuit split with the First and Second Circuits, noting that a key difference between the *Hewitt* plaintiff and the plaintiffs in the First and Second Circuit decisions did not create a circuit split. *Id.* at 597.

In *Anani v. CVS RX Servs., Inc.*, 730 F.3d 146 (2d Cir. 2013), and *Litz v. Saint Consulting Grp., Inc.*, 772 F.3d 1 (1st Cir. 2014), the Second and First Circuits, respectively, held that the requirements of 29 C.F.R. § 541.604 do not

30

have to be satisfied by an employee meeting the requirements of the HCE. *Hewitt*, 15 F.4th at 297. In both *Anani* and *Litz*, the plaintiffs argued that they were not paid on a salary basis because the reasonable relationship test was not met. *Litz*, 772 F.3d at 5 (stating that plaintiffs argued that their salary must "be reasonably related to plaintiffs' actual pay of more than $3,000 per week."); *Anani*, 730 F.3d at 148–149 ("Appellant's argument is based on Subsection 604(b)'s condition that 'a reasonable relationship exist[ ] between the guaranteed amount and the amount actually earned.'").

The Fifth Circuit stated that "there is no actual conflict" between its decision and *Anani* and *Litz* because those cases "involve pay calculated 'on a weekly, or less frequent basis'—not pay 'computed on . . . a daily . . . basis." *Hewitt*, 15 F.4th at 297. Rather, the *Litz* plaintiff was "guaranteed a minimum weekly salary of $1,000 whether they bill[ed] any hours or not" and the *Anani* plaintiff's "base weekly salary was guaranteed, *i.e.* to be paid regardless of the number of hours . . . actually worked." *Id.* (quoting *Litz*, 772 F.3d at 2; *Anani*, 730 F.3d at 148) (emphasis removed).[4] The Fifth Circuit also noted that the Sixth Circuit distinguished *Litz* and *Anani* for the same reason in *Hughes v. Gulf Interstate Field Servs., Inc.* when it noted that "*Anani* and *Litz* involved plaintiffs who . . . were

---

[4]    As discussed *supra*, the *Litz* plaintiffs, just like Appellants, received a weekly salary plus additional compensation that was premised on their employer's billings to its clients.

31

undisputedly guaranteed *weekly* base salaries above the qualifying level." *Id.* (quoting *Hughes v. Gulf Interstate Field Srvs., Inc.*, 878 F.3d 183, 189–90 (6th Cir. 2017)) (emphasis added).

The Fifth Circuit's discussion of *Anani* and *Litz* is also consistent with the Supreme Court's discussion in *Helix Energy*. As an initial matter, the Supreme Court *affirmed* the Fifth Circuit's *en banc* decision, thus accepting the Fifth Circuit's analysis on this point, even if it did not directly discuss it. *Helix Energy*, 598 U.S. at 48. Further, the Supreme Court's discussion of the regulations shows that whether an employee is paid a weekly or less frequent salary is the determining factor when deciding whether § 604(b) applies. *See id.* at 44–47, 49–58. Section 602(a) applies when all or part of an employee's compensation is "paid by the week," *id.* at 50, while § 604(b) is "all about daily, hourly, or shift rates," not salaries. *Id.* at 55. This discussion shows that *Anani* and *Litz* do not conflict with *Helix Energy* as the Second and First Circuit's decisions "involve[d] pay calculated 'on a weekly, or less frequent basis'—not pay 'computed on … a daily … basis,'" and therefore, using the plain text of the regulation, the reasonable relationship is inapplicable when an employee is paid a salary. *Hewitt*, 15 F.4th at 297.

**b)** **APPELLANTS' ARGUMENT THAT THEIR JOB BONUSES ARE NOT THE TYPE OF COMPENSATION PERMITTED UNDER § 604(a) IS CONTRADICTED BY THE PLAIN TERMS OF THE REGULATION.**

Relying primarily on this Court's summary and *per curiam* decision in *Gentry v. Hamilton-Ryker IT Sols., L.L.C.*, No. 3:19-cv-00320, 2022 WL 658768 (S.D. Tex. Mar. 4, 2022), *report and recommendation adopted* 2022 WL 889276 (S.D. Tex. Mar. 25, 2022), *aff'd* No. 22-40219, 2023 WL 4704115 (5th Cir. July 24, 2023) (*per curiam*),[5] Appellants argue that § 604(a) only applies in situations when any time-based additional compensation is for work "outside the normal workweek."[6]  However, the actual analysis of the underlying issues comes from the magistrate judge's report and recommendation.   2023 WL 4704115, at *1. Although Smith asserts that *Gentry* is inapplicable to this case, discussed *supra*, in the event the Court finds *Gentry* persuasive (which, respectfully, it should not),

---

[5]     To note, the appellant in *Gentry* has filed a petition for rehearing *en banc*. No. 22-40219, ECF Doc. No. 83 (Aug. 7, 2023).  Further, on October 12, 2023, the Court requested that the appellee submit a response to the petition for rehearing *en banc*.  *Id.* at ECF Doc. No. 90 (Oct. 12, 2023).

[6]     In their brief, Appellants rely heavily on *Gentry* as settled law, and their citations to the case are almost exclusively from the magistrate judge's report and recommendation, which was adopted by the district court with little analysis, *Gentry*, 2022 WL 889276, not the Fifth Circuit's *per curiam* decision.  Similarly, Appellants rely on the magistrate judge's report and recommendation in *Guilbeau v. Schlumberger Tech. Corp.*, to which objections have been filed and remain pending. No. SA-21-CV-00142-JKP, 2023 WL 4424075 (W.D. Tex. July 7, 2023), *objections filed* ECF No. 88.

*Gentry* shows that the subsection applicable to Appellants' compensation is § 604(a).

In *Gentry*, the magistrate judge examined the examples set forth in § 604(a) and (wrongly) held that the examples are "proscriptive."  2022 WL 658768, at *5. In other words, despite the language of § 604(a) stating that additional compensation may be paid "on any basis," the court limited the application of § 604(a) to the specific examples set out in the regulation.[7]  *See id.*   This conclusion, however, is contrary to the language of § 604(a).

> ### (1)  SECTION 604(a) IS NOT LIMITED TO THE EXAMPLES SET OUT IN THE REGULATION.

Simply put, the examples set forth in § 604(a) are not proscriptive, and the district court in *Gentry* was incorrect.

The first sentence of § 604(a) states that an employer may pay additional compensation without losing the exemption as long as the employee is paid at least the weekly minimum on a salary basis.   29 C.F.R. § 541.604(a).  That sentence then ends with a period. It is followed by a list of examples, and the last sentence of the subsection states that the examples are non-exclusive.   The list of examples in

---

[7]     In *Gentry*, one of the plaintiffs was paid on an hourly basis, and the employer later changed that plaintiff's compensation to a "salary" that was expressly stated as equal to eight (8) hours of pay.  2022 WL 658768, at *2.  The second plaintiff was paid a "salary" which was functionally equal to eight (8) hours of pay.  *Id.*  Both plaintiffs received pay for all hours worked over eight (8) in a week at an hourly rate. *Id.*

34

§ 604(a) are just that—examples.  There is no statement that § 604(a) is limited to those enumerated examples.

In fact, the regulation itself says that: "additional compensation may be paid on *any basis* . . . and may include paid time off."  29 C.F.R. § 541.604(a) (emphasis added).  This sentence also includes a list of non-exhaustive examples: "*e.g.*, flat sum, bonus payment, straight time hourly amount, time and one-half or any other basis."  *Id.*  These examples clearly include time-based extra compensation— "straight time hourly amount, time and one-half . . ."—as allowable under subsection (a).

The *Gentry* court's conclusion that § 604(a) only applies when an employee's additional compensation falls within the scope of one of its enumerated examples is belied by the text of the regulation.  In *Wilson v. Schlumberger Tech. Corp.*, the Tenth Circuit noted this when it distinguished *Gentry* from the pay practice at issue in that case—which is identical to the pay practice at issue here—finding that there is a "stark contrast in the fact patterns [the] respective courts are concerned with." 80 F.4th at 1179 n.4.  The Tenth Circuit observed that the regulation contains three (3) different examples and nothing in the text of the regulation "exclude[s] other compensation schemes where additional compensation is calculated hourly but not beyond the 40-hour workweek."  *Id.*  The Tenth Circuit further distinguished *Gentry*, stating that it was "wholly concerned with a compensation scheme where

35

the employee received a guaranteed weekly salary equal to 8 hours of pay in any week in which the employee performed any work—*i.e.*, it was computed on an hourly basis." *Id.*  The *Gentry* court, according to the Tenth Circuit, also relied exclusively on other decisions involving pay computed on an hourly basis or based on two different projects.  *Id.*  Implicit in the Tenth Circuit's discussion is that the pay practice in *Gentry* and the cases on which the court relied did not involve a true salary like the one Smith paid Appellants.  *See id.*

### (2) SECTION 604(a) EXPRESSLY ALLOWS THE PAYMENT OF APPELLANTS' JOB BONUSES AS ADDITIONAL COMPENSATION.

The text of the regulation makes clear that § 604(a) applies to Appellants' compensation.  Section 604(a) expressly states that compensation like Appellants' job bonuses is permitted:

> An exempt employee also may receive a *percentage of the sales or profits* of the employer if the employment arrangement also includes a guarantee of at least $455 each week paid on a salary basis.

29 C.F.R. § 541.604(a) (emphasis added).

That is exactly what Appellants' job bonuses were:  a payment based on the billable work performed by Appellants.  They were not, as discussed *infra*, "day rates."  Indeed, comparing Appellants' job bonuses with day rates is a false equivalence.  Appellants' desire to equate their job bonuses with day rates feeds into their incorrect narrative that such payments were simply for days worked.

36

Although there may be a correlation, they are fundamentally and analytically different. Just because Appellants' job bonuses were calculated by reference to billable days worked does not transform them to a day rate method of compensation.[8]

Thus, per *Hebert*, § 604(a) is the applicable subsection, and the reasonable relationship test does not apply.

### 2. SECTION 604(B) IS INTENDED TO ADDRESS EMPLOYEES WHOSE ENTIRE COMPENSATION IS CALCULATED ON AN HOURLY, DAILY, OR SHIFT BASIS.

When reading § 604(b), the clear import of this section is that it applies when an employee's base compensation is calculated on an hourly, daily, or shift basis. *See* 29 C.F.R. § 541.604(b). This section has no carve out, like § 602(a), for part of the employee's compensation to be paid on a true salary basis. As the Supreme Court stated in *Helix Energy*, § 604(b) "focuses on workers whose compensation is 'computed on an hourly, daily and shift basis'" and states "an employer may base

---

[8]     An apt comparison can be found in the Age Discrimination in Employment Act ("ADEA") context. Though there may be a correlation between a decision based on seniority and one based on age, a decision based on seniority does not constitute a violation of the ADEA. *See Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610–614, 113 S. Ct. 1701 (1993) (holding that decision to terminate employee solely based on date of accrual of pension and not age does not violate ADEA); *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 406 (5th Cir. 2008) (holding that termination decisions based on seniority do not violate ADEA); *Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 152 (5th Cir. 1995) (holding that decision to terminate employee based on a high salary or "fast approaching" eligibility for retirement benefits does not violate ADEA).

37

an employee's pay on an hourly, daily, or shift rate without 'violating the salary basis requirement' or 'losing the [bona fide executive] exemption' so long as two conditions are met." *Helix Energy*, 598 U.S. at 46–47. The Supreme Court's discussion of its definition of the term "basis" supports its conclusion. Again, the term "basis" means the unit of time on which the employee's salary is measured and is the "foundation of the thing." *Id*. at 52. Considering the Supreme Court's language, § 604(b) applies when the foundation of an employee's "salary" is based on a unit of time more frequent than one week. *See id.*

In basic terms, § 604(a) applies when an employee is paid salary *plus* additional amounts. *See* 29 C.F.R. § 541.604(a). This is exactly how Appellants were paid: a salary plus job bonuses based on days worked that were billable to Smith's clients.

The only type of compensation discussed in § 604(b) is pay based on an hourly, daily, or shift basis. *See* 29 C.F.R. § 541.604(b). Section 604(b) neither contemplates nor includes any provision for the payment of a salary plus additional compensation—that is what § 602(a) and § 604(a) are for. This provision is designed for employees paid only on an hourly, daily, or shift basis and, as such, they automatically receive additional pay for hours over forty.

Any other reading of § 604 ignores the plain text of the regulation and, using this reading, Appellants' method of compensation (a true salary plus additional

38

compensation) falls within § 604(a), not § 604(b), and the reasonable relationship test does not apply here. As the Supreme Court states, § 604(b) is "all about daily, hourly, or shift rates," not salaries. *Helix Energy*, 598 U.S. at 55.

Indeed, this conclusion also shows that Appellants' reliance on *Gentry* is misplaced. In *Gentry*, the plaintiff received guaranteed compensation in the form of a "salary" that consisted of pay for eight (8) hours a week plus the same hourly pay for hours worked over eight (8) at an hourly rate. 2022 WL 658768, at *2. In other words, the "basis" for the plaintiffs' salary was an hourly rate, which is consistent with the Supreme Court's pronouncement of what the term "basis" in the regulations means. *Id.* This is in stark contrast to how Appellants were paid: a guaranteed bi-weekly salary paid regardless of how much or how little they worked.

The DOL Opinion Letter, dated November 8, 2018, supports this conclusion as well. Opinion Letter, FLSA 2018-25, 2018 WL 5925115 (Nov. 18, 2018). There, the DOL applied the reasonable relationship test to employees who were paid a guaranteed weekly amount that the employer "derives . . . by multiplying $70 by 30 hours (the minimum hours the employees typically work per workweek)," plus pay at $70 per hour for hours worked over 30. *Id.* All the employees' compensation was determined by reference to a time-based calculation.[9]

---

[9]     It is worth noting that the party who requested the Opinion Letter asked whether its compensation practice satisfied the reasonable relationship test, not whether it applied in the first place. 2018 WL 5925115, at *1.

Further, the DOL's statement in 2004 when § 604 was first introduced also shows the folly in Appellants' argument. As a starting point, the DOL stated that § 604(b) provides "that an exempt employee's *salary may be computed* on an hourly, daily or shift basis, if the employee is given a guarantee of at least the minimum weekly required amount paid on a salary basis . . . ." *Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees*, 69 F.R. 22122-01, 2004 WL 865626, at *22183 (Apr. 23, 2004) (emphasis added).

The DOL reached the opposite conclusion when given different facts in its January 7, 2020, Opinion Letter where the "salary" was not computed on an hourly basis. Opinion Letter, FLSA2020-2, 2020 WL 122924 (Jan. 7, 2020). That letter addressed consultants compensated on a fee basis and paid a bi-weekly amount that exceeded the exempt salary threshold. *Id.* The DOL was asked whether payment of additional fees for a second project complies with the fee basis requirements. *Id.* In addressing the impact of payments for the second project, the DOL stated, "[a]s the employee's underlying compensation is not computed on an hourly, daily, or shift basis, the reasonable relationship test does not apply." *Id.* at *4.

Finally, in *Litz*, discussed *supra*, the way those plaintiffs were paid and how Appellants were paid is virtually identical. In *Litz*, "every project manager was guaranteed to receive at least $1,000 a week." *Litz v. Saint Consulting Grp., Inc.*,

40

No. 11-1-693-GAO, 2013 WL 5205868, at *1 (D. Mass. Sept. 13, 2013).  In addition to their weekly salary, the *Litz* plaintiffs earned additional compensation "based on the number of hours worked that [were] billable to the firm's clients in a particular week."  *Id.*  The *Litz* plaintiffs argued that they were not paid on a salary basis because their compensation did not satisfy the reasonable relationship test.  The court rejected the plaintiffs' argument that the reasonable relationship test applied as it "misse[d] the mark" because "[t]he plaintiffs' pay was not computed on the basis of hours worked, but rather of hours billed.  It was thus more like a commission than an hourly wage."  *Id.* at *2.

## F.   THE TENTH CIRCUIT RECENTLY EXAMINED THE EXACT SAME PAY PRACTICE AT ISSUE HERE AND HELD THAT THE REASONABLE RELATIONSHIP TEST DOES NOT APPLY.

On September 11, 2023, the Tenth Circuit issued its decision in *Wilson v. Schlumberger Tech. Corp.*, 80 F.4th 1170 (10th Cir. 2023).[10]  In *Wilson*, the Tenth Circuit addressed the same question as presented here:  whether § 604(b)'s reasonable relationship test applies to a "hybrid" pay practice where the employee receives a guaranteed salary and additional compensation for days spent working on his employer's customers' well sites.  *Id.* at 1173.  The Tenth Circuit held that the reasonable relationship test does not apply in that situation.

---

[10]    The appellee in *Wilson* has filed a petition for rehearing *en banc* that is currently before the Tenth Circuit.  No. 21-1231, ECF Doc. No. 010110926581 (Sept. 25, 2023).

4855-5706-1512, v. 1

The *Wilson* plaintiff worked as a measurement-while-drilling operator for the defendant, Schlumberger Technology Corp.[11]  *Id.*  The plaintiff's compensation consisted of a fixed bi-weekly salary and, for time spent on a drilling rig, a rig-rate bonus of $205 per day, a stand-by rate of $102.50 per day, and various other bonuses."[12]  *Id.*  At trial, the district court instructed the jury to apply the reasonable relationship to the plaintiff's compensation, and the jury found that the plaintiff's compensation did not meet the reasonable relationship test, and he was entitled to overtime compensation.  *Id.*  On appeal, the Tenth Circuit vacated the jury's determination, holding that the district court should not have instructed the jury to apply the reasonable relationship test because it was inapplicable.  *Id.* at 1180.

The court stated that "[t]he question is whether § [604(b)] applies when an employee receives *additional compensation* on an hourly, daily, or shift basis, or if the regulation only applies when an employee receives his *base compensation* on an hourly, daily, or shift basis."  *Id.* at 1176 (emphasis in original).  In its analysis, the Tenth Circuit began by examining the two subsections of § 604.  *Id.* at 1176–77.  The court began by noting that § 604(a) applies to employees who receive

---

[11]    To note, Schlumberger Technology Corporation is a sister company of Appellee.

[12]    Though the text of the Tenth Circuit's decision describes the rig-rate and other bonuses as a set amount "per hour," this is presumably a scrivener's error, and the court should have used the phrase "per day" instead.  Indeed, later in the decision, the court refers to the defendant's pay practice as a "day-rate bonus system."  *Id.* at *5.

additional compensation above a base salary;" § 604(b), however, "does not refer to additional compensation at all," rather it "makes clear" that the reasonable relationship test applies "only if the employee's *pay* is computed on an hourly, daily, or shift basis." *Id*. at 1176 (quoting § 604(b)) (emphasis in original).

Further, according to the court, the examples set forth in the two subsections supported the conclusion that the reasonable relationship test only applies when an employee's base pay is computed on an hourly, daily, or shift basis. Section 604(a) provides several examples where an employee receives additional compensation along with a base salary. *Id.* By contrast, the example set out in § 604(b) describes a situation where the employee's pay is calculated on a shift basis. *Id.* at 1176-77.

The court then turned to the DOL final rule adopting the current version of § 604. According to the court, the DOL's explanation of the section distinguishes between employees who receive a salary plus additional compensation and those employees who are paid on an hourly, daily, or shift basis by use of the terms "actual pay" and "actual compensation." *Id.* at 1177. The term "actual compensation" refers to an employee's base salary and stated that while the plaintiff's pay varied week-to-week, his actual compensation was his salary that did not vary, and he "was paid the same salary every two weeks." *Id.*

Finally, the court noted that § 604(a) expressly provides that additional compensation may be paid on "any basis," including time-based categories of pay.

43

*Id.* The court concluded that the defendant's "day-rate bonus system fits squarely within [§ 604(a)]," and, therefore, the reasonable relationship test does not apply. *Id.*

Next, the court examined the Supreme Court's decision in *Helix Energy* as well as several other decisions from different courts. To start, the court discussed *Helix Energy*. In *Helix Energy*, the Supreme Court's "discussion of [§ 604] makes it clear that subsection (b), and its reasonable relationship requirement, is only appropriate for workers compensated on an hourly, daily, or shift basis, not for whose compensation is calculated on a weekly or less frequent basis." *Id.* at 1178. According to the Tenth Circuit, the Supreme Court "*emphasized* that under the regulatory scheme, '§ 602(a) and § 604(b) are independent routes for satisfying the [ ] the rule's salary-basis component.'" *Id.* (quoting *Helix Energy*, 598 U.S. at 50 n.3.) (emphasis added).

The Tenth Circuit also pointed to *Higgins v. Bayada Home Health Care, Inc.*, 62 F.4th 755 (3d Cir. 2023), to support its conclusion. In *Higgins*, the Third Circuit held that because § 602(a) "requires only that the employee receive a predetermined amount of money each pay period that is *part of* the employee's compensation," "[s]o long as the employer does not dock that pre-determined part of the employee's compensation, the employer has satisfied the salary basis test." *Wilson*, 80 F.4th at 1178 (quoting *Higgins*, 62 F.4th at 761) (emphasis in original).

44

Next, the Tenth Circuit pointed to this Court's decision in *Hebert* to support its conclusion.  In *Hebert*, the plaintiff received a guaranteed salary plus additional compensation "in the form of a field-service premium for days spent working at an offshore site."  *Id.* (citing *Hebert*, 2023 WL 4105427 at *2).  This Court held that the reasonable relationship test only applies to "employees whose earnings are computed on an hourly, daily, or shift basis." *Id.* (quoting *Hebert*, 2023 WL 4105427, at *2 n.5).    "Consequently, because [the plaintiff] was a salaried employee, he was not covered by § 604(b)."  *Id.* at 1778-79.

The Tenth Circuit then noted the Eleventh Circuit's decision in *Bell v. Callaway Partners, LLC*, 394 F. App'x 632 (11th Cir. 2010), where the court held that under § 604(a), "if an employee receives a guaranteed minimum salary that is not tied to hours, days, or shifts worked, then the employer can pay additional compensation in any manner it chooses, including based on an hourly or daily rate." *Id.* at 1779.  Also, the Tenth Circuit positively cited the district court's decision here in support of the conclusion that the reasonable relationship test does not apply to Appellant's pay practice.  *Id.* (citing *Venable v. Schlumberger Ltd.*, No. 6:16-cv-00241, 2022 WL 895447 (W.D. La. Mar. 25, 2022), *appeal filed sub nom. Venable v. Smith Int'l*, No. 22-30227 (5th Cir. Apr. 22, 2022)).

The Tenth Circuit's holding in *Wilson* is directly on point to the facts and circumstances in this appeal, and the Court should reach the same holding here.

**G.     THE DOL EXCEEDED ITS AUTHORITY AS SET FORTH IN THE FLSA BY REQUIRING THAT AN EXEMPT EMPLOYEE MUST BE PAID ON A "SALARY BASIS."**

On appeal, Appellants have abandoned their argument and do not contest that their job duties meet the requirements of the HCE, and they likewise abandon any argument that they satisfy the income thresholds for the HCE.  The only issue on appeal, therefore, is the legal question as to whether the method by which Smith compensated Appellants satisfies the salary basis test.  As such, it is appropriate for the Court to consider the pure legal issue of whether the DOL has the authority to impose a salary basis test for the FLSA's administrative, executive, professional, and HCE exemptions.

**1.     THE COURT MAY CONSIDER THE VALIDITY OF THE SALARY BASIS TEST ALTHOUGH IT WAS NOT RAISED BELOW.**

Although not raised below, the Court has discretion to consider arguments regarding the validity of the salary basis test.  Generally, a party waives an argument by not raising it in the district court.

However, there is a "well-settled discretionary exception to the waiver rule . . . where a disputed issue concerns a pure question of law."  *Ekhlassi v. Nat'l Lloyd's Ins. Co.*, 926 F.3d 130, 138 (5th Cir. 2019) (quotations omitted); *see also New Orleans Depot Servs. Inc. v. Dir. Off. of Worker's Comp. Programs*, 718 F.3d 384, 388 (5th Cir. 2013) (*en banc*) (agreeing to 'exercise [the Court's] discretion to decide [a] "legal issue" raised by a party for the first time to the *en banc* court,

46

"notwithstanding [the party's] failure to challenge the issue" previously).

The question of whether the DOL exceeded its authority by imposing the salary basis requirement with respect to determining if an employee is exempt is a pure legal issue since "this is an appeal from a summary judgment," and Appellants will have an "adequate opportunity to brief and argue the issue before the . . . court." *Ekhlassi*, 926 F.3d at 138–39 (quotations omitted).

The Court should exercise its discretion and address this pure issue of law. Further, this case is particularly suited to do so as it is undisputed that Appellants satisfy the requirements of the HCE, and the sole issue for the Court to determine is whether Appellants were improperly classified as exempt due solely to how they were compensated.

### 2.     THE TEXT OF THE FLSA PROVIDES THAT IT IS AN EMPLOYEE'S JOB DUTIES AND NOT HOW THEY ARE PAID THAT DETERMINES EXEMPT STATUS.

Pursuant to the FLSA, employees in a bona fide executive, administrative, or professional capacity "as defined and delimited from time to time by regulations of the [DOL]" are exempt from the overtime requirements of the statute. 29 U.S.C. § 213(a)(1). However, the DOL exceeds its authority if its regulations are at odds with the FLSA's text:

> However, the Department's authority is limited by the plain meaning of the words in the statute and Congress' intent. Specifically, the Department's authority is limited to determining the essential qualities of, precise signification of, or marking the limits of those "bona fide

47

> executive, administrative, or professional capacity" employees who
> perform exempt duties and should be exempt from overtime pay . . .
> nor does the Department have the authority to categorically exclude
> those who perform "bona fide executive, administrative, or
> professional capacity" duties based on salary level alone.  In fact, the
> Department admits "[T]he Secretary does not have the authority under
> the FLSA to adopt a 'salary only' test for exemption.  81 F.3d 446
> (citing Defining and Delimiting the Exemptions for Executive,
> Administrative, Professional, Outside Sales and Computer Employees;
> Final Rule, 69 Fed. Reg. 22122, 22173 (April 23, 2004)).

*Nevada v. U.S. Dept. of Labor*, 275 F. Supp. 3d 795, 805–06 (E.D. Tex. 2017).

In recognition of this limitation, the DOL's position is that the salary test is

just a proxy for the level of responsibility of the position.

> [T]he law does not give the Department authority to set minimum
> wages for executive, administrative, and professional employees.
> These employees are exempt from any minimum wage requirements.
> The salary level test is intended to help distinguish bona fide
> executive, administrative, and professional employees from those
> who were not intended by Congress to come within these exempt
> categories.
>
>                             * * *
>
> Salary levels "furnish a practical guide to the investigator as well as
> the employers and employees in borderline cases and simplify
> enforcement by providing a ready method for screening out *obviously
> nonexempt employees.*"

69 Fed. Reg. 22122, 22165 (April 23, 2004) (emphasis added).

Here, the salary level or reasonable relationship test cannot serve as a proxy

as it is uncontested that Appellants satisfy the duties test.

"The plain meaning of executive, administrative, and professional capacity

48

relate[d] to a person's performance, conduct, or function" at the time of the adoption of the FLSA. *Nevada*, 275 F. Supp. 3d at 804. Though the DOL may "define and delimit" these exemptions, "[n]othing in Section 213(a)(1) allows the [DOL] to make salary rather than an employee's duties determinative of whether a 'bona fide executive, administrative, or professional' capacity employee should be exempt from overtime pay." *Id.* at 805.

Should the Court hold that § 604(b) applies Appellants, who do not contest that they performed exempt job duties and earned significant levels of total compensation, they would be deemed non-exempt simply because they received additional compensation over and above their salary. This would be no different than establishing a minimum wage for the exemptions that the text of the FLSA expressly prohibits.

Further supporting the conclusion that the text of the FLSA does not allow for the salary basis test for employees in an executive, administrative, or professional capacity is the fact that in other places within the FLSA, Congress expressly included compensation requirements for certain exemptions. For example, the FLSA requires that in order to be exempt, baseball players must be paid a specific "weekly salary." 29 U.S.C. § 213(a)(19). Certain computer employees must be paid a specific hourly rate in order to be exempt. 29 U.S.C. § 213(a)(17). Delivery drivers must be "compensated . . . on the basis of tip rates,

49

or other delivery payment plans" in order to be exempt. 29 U.S.C. § 213(b)(11). Finally, certain educational workers must be paid "on a cash basis, at an annual rate of not less than $10,000." 29 U.S.C. § 213(b)(24).

Simply put, by not including compensation-based requirements for the executive, administrative, and professional exemptions but doing so for other exemptions, Congress clearly indicated that those exemptions are duties-based and do not include compensation-based requirements. *Cf. Addison v. Holly Hill Fruit Prod.*, 322 U.S. 607, 614 (1944) (rejecting DOL regulation limiting exemption based on size as inconsistent with the statute "[w]here Congress wanted to make exemption depended on size, as it did in two or three instances not relevant here, it did so by appropriate language.").

Justice Kavanaugh (joined by Justice Alito) raised this issue in dissent in *Helix Energy*:

> The [FLSA] focuses on whether the employee performs White-Collar duties, not how much an employee is paid or how an employee is paid. So it is questionable whether the [DOL's] regulations—which look not only at an employee's duties but also to how much an employee is paid and how an employee is paid—will survive if and when the regulations are challenged as inconsistent with the [FLSA]. It is especially dubious for the regulations to focus on how an employee is paid (for example, by salary, wage, commission, or bonus) to determine whether the employee is a bona fide executive. An executive employee's duties (and perhaps his total compensation) may be relevant to assessing whether the employee is a bona fide executive. But I am hard-pressed to understand why it would matter for assessing executive status whether an employee is paid by salary, wage, commission, bonus, or some combination thereof.

50

*Helix Energy*, 598 U.S. at 67–68 (Kavanaugh, J., dissenting); *see also Buckner v. Armour & Co.*, 53 F. Supp. 1022, 1024 (N.D. Tex. 1942) (rejecting DOL's salary basis requirement as "an attempted law making function, while the power delegated to [the DOL] was only to define [the terms executive, administrative, and professional].").

The DOL only has "those powers given to them by Congress." *West Virginia v. EPA*, 142 S. Ct. 2587, 2609 (2022). The statutory text of the FLSA provides that Congress granted the DOL the ability to "define and delimit" the executive, administrative, and professional exemptions based on an employee's job duties. Had Congress meant to include a salary basis test in those exemptions, it knew how to do so as evidenced by the multiple times it did so in the text of the FLSA. The DOL exceeded its authority by including the salary basis test.

## CONCLUSION

The district court correctly held that Appellants were properly classified as exempt from overtime and, because they were paid a bi-weekly salary that did not change depending on the quantity or quality of work, the reasonable relationship test of § 604(b) does not apply. For the reasons discussed above, Appellee Smith International, Inc., respectfully requests that this Court affirm the district court's order granting summary judgment in favor of it and judgments dismissing Appellants' claims with prejudice.

51

*/s/Bryan Edward Bowdler*
Samuel Zurik III (LA Bar #24716)
Robert P. Lombardi (LA Bar #26387)
Bryan Edward Bowdler (LA Bar #32097)
THE KULLMAN FIRM, P.L.C.
1100 Poydras Street, Suite 1600
New Orleans, LA 70163
Telephone: (504) 524-4162
Facsimile: (504) 596-4189
E-Mail: sz@kullmanlaw.com
E-Mail: rpl@kullmanlaw.com
E-Mail: beb@kullmanlaw.com

**COUNSEL FOR APPELLEE,
SMITH INTERNATIONAL, INC.**

52

## CERTIFICATE OF SERVICE

I served this Brief of Defendant-Appellee on October 20, 2023, via the Court's CM/ECF System in accordance with the Federal Rules of Appellate Procedure and the Fifth Circuit's Local Rules on the following:

Matthew S. Parmet (matt@parmet.law)
Kenneth St. Pé (kds@stpelaw.com)
Aaron Johnson (ajohnson@fairlaborlaw.com)

*/s/Bryan Edward Bowdler*
Bryan Edward Bowdler
Counsel    for    Appellee,    Smith
International, Inc.

### CERTIFICATE OF COMPLIANCE

1.      This Brief complies with the type-volume limitation of Rule 32(a)(7)(B)(i) of the Federal Rules of Appellate Procedure because, excluding the parts of the Brief exempted under Rule 32(f) of the Federal Rules of Appellate Procedure, the Brief contains 12,242 words.

2.      This Brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and Fifth Circuit Rule 32.1, and the requirements of Federal Rule of Appellate Procedure 23(a)(6), because the Opposition has been prepared in a proportionally spaced, serif typeface using roman style in Times New Roman 14-point font.

*/s/Bryan Edward Bowdler*
Bryan Edward Bowdler
Counsel    for    Appellee,    Smith International, Inc.

54