No. 22-30227

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

JACK VENTON VENABLE *et al.*,

Plaintiffs-Appellants

v.

SMITH INTERNATIONAL, INCORPORATED,

Defendant-Appellee

_____

Consolidated Appeal from Cause Nos. 6:16-cv-00241, 6:17-cv-00860,
6:19-cv-00238; 6:19-cv-00239, 6:19-cv-00240;
In the Western District of Louisiana
(Honorable Robert R. Summerhays, Presiding Judge)

_____

**REPLY BRIEF OF PLAINTIFFS-APPELLANTS**

_____

**AARON JOHNSON**
**FAIR LABOR LAW**
314 E. Highland Mall Blvd, Ste. 401
Austin, TX 78752
(512) 277-3505

**KENNETH ST. PÉ**
**ST. PÉ LAW**
311 West University Ave., Ste. A
Lafayette, LA 70506
(337) 534-4043

**MATTHEW S. PARMET**
**PARMET PC**
2 Greenway Plaza, Ste. 250
Houston 77046
(713) 999-5228

**Attorneys for Appellants**

# <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS............................................................................i

TABLE OF AUTHORITIES ..................................................................iii

ARGUMENT.........................................................................................1

   I.    Smith wrongly argues that § 604(b) never applies to any hybrid pay arrangement that includes a salary. ............................................... 2

       A.    Smith outright denies that § 604(b) covers pay arrangements that include a salary, even though the plain text explicitly says it does. ....................................................................................................2

       B.    Smith's theory hinges on a bogus, unexplained distinction between what it calls a "true salary" and a mere guaranteed weekly minimum. ..........................................................................3

       C.    Smith's theory would allow employers to evade the "salary basis" and "reasonable relationship" requirements by use of facile labels. ....................................................................................................5

       D.    Section 604(a) and § 604(b) both apply to salary-plus-extras arrangements, but they apply to different types of extras............8

       E.    The reason for § 604's distinction between types of payment is fundamental to the Act's purposes. .................................................9

   II.    Smith wrongly argues that § 604(a) applies to all hybrid arrangements that include a salary. .............................................. 10

       A.    Sections 602(a) and 604(a) can't apply because they don't cover time-based pay for hours within the normal workweek. ............10

       B.    Smith takes § 604(a)'s "on any basis" out of context, ignoring § 604(b). ....................................................................................11

       C.    Smith's theory would nullify § 604(b). .........................................13

D.    Smith incorrectly argues its day rate isn't a day rate. .................13

E.    *Hebert* didn't consider the argument, much less conclude, that a day rate for hours within the normal workweek is covered by § 604(b)......................................................................................16

F.    *Anani* and *Litz* remain inapposite. ................................................18

III.   *Wilson* is wrong for the same reasons Smith is wrong. .................. 19

A.    *Wilson* erroneously equates "earnings" in § 604(b) with "base salary." .........................................................................................19

B.    *Wilson* manufactures the erroneous concept of "actual pay" to support the bogus distinction between a salary and a mere guaranteed weekly minimum. ........................................................20

C.    *Wilson* misinterprets § 604(a)'s "on any basis" by ignoring the key word "such." ...........................................................................21

D.    *Higgins* and *Bell* are inapposite. ..................................................21

IV.   This Court should reject Smith's argument that the DOL doesn't have the authority to establish a "salary basis" requirement. ........ 22

A.    Smith forfeited the issue. ...........................................................22

B.    Longstanding precedent upholds the "salary basis" requirement as a valid exercise of the DOL's authority. ................................23

CONCLUSION....................................................................................................27

CERTIFICATE OF CM/ECF FILING AND SERVICE ...............................28

CERTIFICATE OF COMPLIANCE................................................................29

# TABLE OF AUTHORITIES

## CASES

*Alstate Const. Co. v. Durkin,*
    345 U.S. 13 (1953) ..................................................................... 26

*Anani v. CVS RX Servs., Inc.,*
    730 F.3d 146 (2d Cir. 2013)....................................................... 18

*Auer v. Robbins,*
    519 U.S. 452 (1997) ................................................................... 25

*Belanger v. Geico Gen. Ins. Co.,*
    623 F. App'x 684 (5th Cir. 2015)............................................... 22

*Bell v. Callaway Partners, LLC,*
    394 F. App'x 632 (11th Cir. 2010).............................................. 22

*Brock v. Mr. W Fireworks, Inc.,*
    814 F.2d 1042 (5th Cir.1987) ...................................................... 7

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,*
    467 U.S. 837 (1984) .............................................................. 23, 24

*Craig v. Far W. Eng'g Co.,*
    265 F.2d 251 (9th Cir. 1959) ..................................................... 25

*Guilbeau v. Schlumberger Tech. Corp.,*
    2023 WL 4424075 (W.D. Tex. July 7, 2023) ..................... 15, 16

*Hebertv. FMC Techs., Inc,*
    No. 22-20562, 2023 WL 4105427 (2023).............................. 16, 17

*Helix Energy Sols. Grp., Inc. v. Hewitt,*
    143 S.Ct. 689........................................................................... *passim*

*Hewitt v. Helix Energy Sols. Grp., Inc.,*
    15 F.4th 289 (5th Cir. 2021) ........................................... 9, 13, 18

*Higgins v. Bayada Home Health Care, Inc.*,
    62 F.4th 755 (3d Cir. 2023) ......................................................... 21

*Higgins v. Bayada Home Health Care, Inc.*,
    2021 WL 4306125 (M.D. Pa. Sept. 22, 2021) ......................... 21

*Hopkins v. Cornerstone Am.*,
    545 F.3d 338 (5th Cir. 2008) ........................................................ 7

*Litz v. Saint Consulting Grp., Inc.*,
    772 F.3d 1 (1st Cir. 2014) ........................................................... 18

*Mayfield v. U.S. Dep't of Labor*,
    2023 WL 6168251 (W.D. Tex. Sept. 20, 2023) ....................... 23

*Mitchell v. Kentucky Fin. Co.*,
    359 U.S. 290 (1959) ....................................................................... 26

*Morton v. Ruiz*,
    415 U.S. 199 (1974) ....................................................................... 23

*Nevada v. United States Dep't of Labor*,
    275 F. Supp. 3d 795 (E.D. Tex. 2017) ................................. 26, 27

*New Orleans Depot Servs., Inc. v. Dir. Office of Worker's Comp. Programs*,
    718 F.3d 384 (5th Cir. 2013) ...................................................... 22

*Rollins v. Home Depot USA*,
    8 F.4th 393 (5th Cir. 2021) ......................................................... 22

Secretary of Labor's Brief as Amicus Curiae in Support of Plaintiff-
    Appelleeamicus, *Gentry*, (No. 22-40219), 2023 WL 4303314 (2023) . *passim*

*Steiner v. Mitchell*,
    350 U.S. 247 (1956) ....................................................................... 26

*United States Dep't of Labor v. Fire & Safety Investigation Consulting Services, LLC*,
    915 F.3d 277 (4th Cir. 2019) ........................................................ 7

*United States v. Fafalios*,
   817 F.3d 155 (5th Cir. 2016) ..................................................... 13

*United States v. Mead Corp.*,
   533 U.S. 218 (2001) ................................................................. 23

*Walling v. Morris*,
   155 F.2d 832 (6th Cir. 1946) ..................................................... 25

*Walling v. Yeakley*,
   140 F.2d 830 (10th Cir. 1944) ................................................... 25

*Wilson v. Schlumberger Tech. Corp.*,
   80 F.4th 1170 (10th Cir. 2023) ...........................................19-21

*Wirtz v. Mississippi Publishers Corp.*,
   364 F.2d 603 (5th Cir. 1966) ..................................................... 25

## STATUTES

29 U.S.C.
   § 213(a)................................................................................. 24, 25

## REGULATIONS

29 C.F.R.
   § 541.602(a)(1) ................................................................. *passim*
   § 541.604 .......................................................................... *passim*
   § 541.604(a) ......................................................................*passim*
   § 541.604(b)...................................................................... *passim*

## OTHER AUTHORITIES

Fifth Cir. Rule Rule 47.5.4 ........................................................ 18

*Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees*,
   69 Fed. Reg. 22122, 22165 (April 23, 2004)......................20, 27

*Defining and Delimiting the Exemptions for Executive, Administrative, Professional,*
    *Outside Sales and Computer Employees*,
    84 Fed. Reg. 51230 (Sep. 27, 2019)........................................................... 27

## ARGUMENT

Smith doesn't attempt to argue that its pay arrangement meets § 604(b)'s "reasonable relationship" test. It doesn't. *See* Opening Br. at 28-31. The parties agree that the issue in this appeal is "limited to whether the 'reasonable relationship' test applies to the method of Appellants' compensation." *Id.* at 20. Smith argues that its salary-plus-day-rate arrangement satisfies § 602(a)'s "salary basis" test and therefore § 604(b) doesn't apply.

Smith's position conflicts with *Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. 39 (2023), the plain text of the regulations, and guidance from the United States Department of Labor (DOL). *Helix* held an employee whose "weekly take-home pay" varied widely "depending on how many days he worked" in his normal workweek was not properly considered a "salaried" employee. *Id.* at 54, n. 5. But under Smith's interpretation, an employee meets § 602(a)'s salary basis test even if the majority of his pay for his normal workweek depends on the number of days he works.

*Helix* confirms that 29 C.F.R. § 541.604(b) is the controlling regulation because it "speaks directly to when daily and hourly rates are consistent with the salary basis concept." *Helix*, 598 U.S. at 56 (cleaned up). *Helix* prohibits reading § 602(a) to "subvert § 604(b)'s strict conditions" on when a "minimum guarantee plus extras" plan "counts as a 'salary.' " *Id.*

1

Smith's position would "create disturbing consequences, by depriving even workers at the heartland of the FLSA's protection . . . of overtime pay." *Helix*, 598 U.S. at 61 (2023). For example, many of America's nurses would lose their overtime rights "in a heartbeat" if labeling a small portion of their regular compensation as a "salary" were all it took to exempt them. *Helix*, 598 U.S. at 61.

**I.    Smith wrongly argues that § 604(b) never applies to any hybrid pay arrangement that includes a salary.**

The crux of Smith's argument is that "where an employee is paid a base salary, it does not matter how any additional compensation is computed, and the reasonable relationship test does not apply." Smith Br. at 28.

**A. Smith outright denies that § 604(b) covers pay arrangements that include a salary, even though the plain text explicitly says it does.**

Smith asserts that "Section 604(b) neither contemplates nor includes any provision for the payment of a salary plus additional compensation," and argues "that is what § 602(a) and § 604(a) are for." *Id.* at 38. That is flatly false. The plain text of 604(b) states that it applies to "arrangement[s] that include[] a guarantee of at least the minimum weekly-required amount paid **on a salary basis**." (emphasis added).

## B. Smith's theory hinges on a bogus, unexplained distinction between what it calls a "true salary" and a mere guaranteed weekly minimum.

Smith argues that 604(b) only covers arrangements where the "**entire compensation**," including the weekly guaranteed minimum (what Smith alternately refers to as "base pay") is calculated on an hourly, daily, or shift basis, like in *Helix*. Smith Br. at 37, heading; 43 (arguing § 604(b) "only applies when an employee's **base pay** is computed on an hourly, daily, or shift basis") (emphasis added). Smith attempts to distinguish this from arrangements covered by § 602(a) and § 604(a), which it argues apply **anytime** "an employee is paid **salary** plus additional amounts." *Id.* at 38 (emphasis added).

Smith implicitly argues—without offering any support—that there's a distinction between what it calls a "true salary" and a mere minimum guarantee. Smith correctly observes that "[t]he two subsections of § 604 cover two distinct compensation practices, and there is no overlap." *Id.* at 28. But Smith errs in identifying the relevant distinction. Smith claims that "Section 604(a) covers situations where an employee is paid a **salary** as defined in § 602(a)," while under § 604(b) "the employer must provide a **weekly guarantee** that the employee will receive if the computation of the employee's earnings on the hourly, daily, or shift basis is less than the **guaranteed amount**." *Id.*; *accord* 14-15 (acknowledging that § 604(b) applies to arrangements that include a

3

"**guarantee** [of] a weekly payment of at least the minimum required for the exemptions," but arguing it "provides an alternative route for those employees who are not paid a **true salary**").

Smith needs such a distinction to exist because it needs a way to distinguish the pay arrangement in *Helix*—where all of the pay was computed on a daily basis and the employee was guaranteed a minimum equal to one day's pay—from its own arrangement—where the guaranteed minimum was labeled a "salary" and didn't happen to be the same amount as a day's pay. After all, the Supreme Court in *Helix* already held that § 604(b)'s "reasonable relationship" requirement applies to the former.

Yet Smith never even asserts more explicitly that a § 602(a) "true salary" is something taxonomically distinct from a § 604(b) weekly minimum guarantee. Much less does Smith offer any logical basis or authority supporting such a distinction.

Regardless, the plain text of Section 604 rules out any such distinction, unequivocally using both terms together to mean the same thing. Sections 604(a) and 604(b) both state with exactly the same language that they apply to compensation "arrangement[s] that include[] a **guarantee of at least the minimum** weekly required amount paid **on a salary basis**." (emphasis added). "Salary basis"—the term used by both § 604(a) and § 604(b)—is defined in

4

Section 602(a) (titled "Salary basis"). Smith itself agrees that this language means "Section 604(a) covers situations where an employee is paid a salary **as defined in § 602(a)**." Smith Br. at 28 (emphasis added). Nevertheless, Smith denies that the exact same language in § 604(b) likewise covers arrangements that include a salary as defined in § 602(a). *Id.*

Smith's conflicting interpretations of the exact same words are untenable. The only logical interpretation is that § 604(a) and § 604(b) both address hybrid pay arrangements that include a minimum guarantee that, **on its own**, would meet the salary basis requirements of § 602(a). Indeed, both sections **require** the minimum guarantee "**on a salary basis**."[1]

### C. Smith's theory would allow employers to evade the "salary basis" and "reasonable relationship" requirements by use of facile labels.

In addition to defying the plain text, Smith's theory would allow

---

[1] An arrangement that computes all pay on a daily basis, like in *Helix*, can still satisfy § 604(b)'s requirement that **part** of the compensation be on a salary basis. Superficially, that might appear in tension with § 602(a)'s definition of "salary basis" as being on a weekly or less frequent basis. But it isn't. The guaranteed weekly minimum in such scenarios, **standing alone**, would meet § 602(a)'s and § 604(b)'s "salary basis" requirement. For example, if Helix Energy had paid Hewitt each week **only** $963 (the amount equivalent to one day of his pay that constituted his minimum guarantee), it would cease to be computed on a daily basis and would instead be on a weekly basis. In that case, it would pass muster under § 602(a) without needing to consider § 604(b). But since the rest of Hewitt's compensation beyond the guaranteed minimum for his normal workweek was computed on a daily basis, it diluted the salary and rendered the arrangement, **taken as a whole**, no longer on a salary basis. *See Helix*, 598 U.S. at 54 n. 5 (Hewitt "received a high day rate (higher than lots of salaries); but he did not get a salary (of $963 or any other amount) because his weekly take-home pay" varied "depending on how many days he worked.")

employers to evade the "reasonable relationship" requirement by simply labeling a token portion of an employee's usual weekly earnings a "salary" and artificially adjusting the time-based rate.

Take for example the pay arrangement in *Helix*, which guaranteed at least $963 (equal to one day's pay) for any week in which Hewitt worked. *Helix*, 598 U.S. at 47. As the Supreme Court explained, "the concept of 'salary' is linked, as a matter of common parlance, to the stability and security of a regular weekly, monthly, or annual pay structure." *Id.* at 52 (cleaned up). "Take away that kind of paycheck security and the idea of a salary also dissolves. A worker paid by the day or hour—docked for time he takes off and uncompensated for time he is not needed—is usually understood as a daily or hourly wage earner, not a salaried employee." *Id.* Hewitt "did not get a salary . . . because his weekly take-home pay could be as little as $963 or as much as $13,482, depending on how many days he worked." *Id.* at 54 n. 5.

Suppose Helix Energy labeled the $963 a "true salary," then adjusted his hourly rate down a bit so that his total compensation still came out to $13,482 for the same pay period. Helix Energy would accomplish the same result— Hewitt's weekly take-home pay could still be as little as $963 or as much as

$13,482, depending on how many days he worked.[2] Under Smith's theory, this relabeling and reverse-engineering to slightly adjust the time-based rate would place the arrangement under § 604(a), beyond the reach of § 604(b)'s "reasonable relationship" requirement, and Helix Energy could dock Hewitt's pay for any days he missed.

But courts don't allow employers to manipulate the FLSA that way. *See Hopkins v. Cornerstone Am.*, 545 F.3d 338, 346 (5th Cir. 2008) ("facile labels ... are only relevant to the extent that they mirror economic reality") (quoting *Brock v. Mr. W Fireworks, Inc.*, 814 F.2d 1042, 1044 (5th Cir.1987)); *United States Dep't of Labor v. Fire & Safety Investigation Consulting Services, LLC*, 915 F.3d 277, 286 (4th Cir. 2019) ("To rule otherwise would permit employers to invent payment schemes that fail to pay proper overtime and then post-hoc attempt to reverse-engineer compliance with the FLSA.").

In contrast, the Supreme Court explained exactly how Helix could fix its pay scheme and comply with the FLSA's salary basis test: "[i]t could add to Hewitt's per-day rate a weekly guarantee that satisfies § 604(b)'s conditions."

---

[2] The only difference between such an arrangement and the one at issue here is that Appellants worked on rigs and got the day rate most, but not all days they worked. But the point is the day-rate component was still the majority of their total compensation, and their pay could be as little as the token salary or multiples more, depending on how many days they worked.

### D. Section 604(a) and § 604(b) both apply to salary-plus-extras arrangements, but they apply to different types of extras.

Smith repeatedly emphasizes that § 602(a) only requires that part, not necessarily all, of the total compensation be a predetermined amount paid on a weekly or less frequent basis. *See, e.g.*, Smith Br. at 23. No one disputes that.

Section 604's reason for existing is to establish that when a salary is coupled with "extras," the arrangement, taken as a whole, might or might not still be considered a "salary." *See* § 604(a) (specifying types of extra pay that can be added to a salary "without . . . violating the salary basis requirement"); § 604(b) (placing conditions on other types of extra pay that can be added to a salary "without . . . violating the salary basis requirement").

Section 604 is titled "Minimum guarantee plus extras." So, naturally, both of its sections cover situations involving minimum guarantees ("on a salary basis") plus extras. § 604(a); § 604(b). The operative distinction between § 604's two sections is the **type** of extra pay. Section 604(a) applies **generally** to various forms of additional pay, including commissions and pay based on time worked beyond the normal workweek. Section 604(b) applies **specifically** to time-based pay for hours within the normal workweek.[3]

---

[3] Smith misconstrues Appellants' argument as meaning "if there is any additional compensation over and above the salary, § 602(a) no longer applies," as though Appellants deny that § 604 allows various forms of additional compensation without violating § 602(a)'s

### E. The reason for § 604's distinction between types of payment is fundamental to the Act's purposes.

The Supreme Court held that § 604(b) is designed to ensure exempt employees (who enjoy neither minimum wage or overtime protections) are at least paid a salary, which means a "weekly payment approximating what the employee usually earns." *Helix*, 598 U.S. at 55–56. The "reasonable relationship" requirement ensures that the overall "compensation system function[s] much like a true salary," *Helix*, 598 U.S. at 47,[4] rather than an "illusion." *Hewitt v. Helix Energy Sols. Grp., Inc.*, 15 F.4th 289, 294 (5th Cir. 2021) *aff'd*, 598 U.S. 39 (2023).

"Thus, whether an employer complies with 541.602(a) by paying the employee's 'full salary' for the normal workweek and paying by-the-hour only for time 'beyond the normal workweek,' 541.604(a), or with 541.604(b) by guaranteeing the employee an amount that roughly covers their normal

---

"salary basis" requirement. Smith Br. at 23. Appellants' point is that, when the type of additional compensation covered by § 604(b) is at issue, "§604(b) in fact confirms the plain-text, weekly-rate-only reading of §602(a)." Opening Br. at 8 (quoting *Helix*, 598 U.S. at 57).

[4] The Supreme Court used "true salary" to mean that a § 604(b) salary-plus-time-based-pay arrangement doesn't meet § 602(a)'s definition, but it still "function[s] much like" it. As discussed above, Smith, on the other hand, implicitly argues that the guaranteed minimum portion of a § 604(a) arrangement is a § 602(a) "true salary" while the guaranteed minimum portion of a § 604(b) arrangement isn't. The guaranteed minimum portion of both sections, standing alone, would be a § 602(a) "true salary." It's only the addition of time-based-pay for hours within the normal workweek that takes a § 604(b) arrangement outside the bounds of § 602(a).

9

workweek, the employee receives stable, predictable pay for their normal workweek that is consistent with exempt status." Secretary of Labor's Brief as Amicus Curiae in Support of Plaintiff-Appellee, *Gentry*, (No. 22-40219), 2023 WL 4303314, *20.

## II. Smith wrongly argues that § 604(a) applies to all hybrid arrangements that include a salary.

Smith argues that § 604(a) permits the "additional compensation over and above the employee's salary"—carte blanche, no exceptions. Smith Br. at 28.

### A. Sections 602(a) and 604(a) can't apply because they don't cover time-based pay for hours within the normal workweek.

Smith argues that, since it paid Appellants a salary that, standing alone, "satisfies § 602(a), they were paid on a salary basis, and § 604(b) is of no import." Smith Br. at 15. Smith emphasizes the Supreme Court's observation "that § 602(a) and § 604(b) are independent routes" and "[a] pay scheme meeting § 602(a) and the HCE's other requirements does not also have to meet § 604(b)." Smith Br. at 23 (quoting *Helix*, 598 U.S. at 50 n. 3).

But they're **mutually exclusive** independent routes. *See* Opening Br. at 13-17. "Were § 602(a) also to cover daily- and hourly-rate employees, it would subvert § 604(b)'s strict conditions on when their pay counts as a "salary." *Helix*, 598 U.S. at 56. "By contrast, when § 602(a) is limited to weekly-rate employees, it works in tandem with § 604(b). The two then offer **non-overlapping paths** to

10

satisfy the salary-basis requirement, with § 604(b) taking over where § 602(a) leaves off." *Id.*

Section 604(a) only comes into play if § 602(a)'s "salary basis" requirement is met because the entire purpose of § 604(a) is to establish that certain types of "extras" can be combined with a § 602(a) salary "without . . . violating the salary basis requirement." § 604(a); *see also* Smith Br. at 28 ("Section 604(a) covers situations where an employee is paid a salary as defined in § 602(a)."). So, since § 604(b) applies to the arrangement here, and not § 602(a), that means § 604(a) is also inapplicable.

### B. Smith takes § 604(a)'s "on any basis" out of context, ignoring § 604(b).

Section 604(a) begins with **general** language: "An employer may provide an exempt employee with additional compensation without losing the exemption . . . ." *Id.* Then it provides examples of the types of additional compensation that fall under it: commissions, percentages of sales or profits, and pay "based on hours worked **for work beyond the normal workweek**." *Id.* The very next sentence states "**[s]uch** additional compensation may be paid on any basis." *Id.*

Smith takes "on any basis" out of context, arguing that § 604(a) applies **anytime** "an employer pays its employee a salary and additional compensation,

11

like Smith paid Appellants." Smith Br. at 28, heading; *see also* 29 (relying on "on any basis" language). But Smith ignores the key word "**such**," which modifies the "on any basis" clause, limiting its application to the category of pay specified in the previous sentence: time-based pay for hours **beyond the normal workweek**.

Smith makes much of the fact that § 604(a) doesn't state that its list is exhaustive. *Id.* at 35. That's a red herring: it doesn't matter whether the list is exhaustive or not. The relevant principle is that § 604(a) states a general principle, while § 604(b) establishes a specific rule. Section 604(a) is immediately followed by § 604(b), which states that it applies **specifically** when a salary is coupled with time-based pay for hours within the normal workweek. And it requires a "reasonable relationship" between the salary and the total compensation.

The Secretary of Labor made the same observation in *Gentry*: "No one contests . . . the unremarkable principle that an illustrative list of examples is usually not exhaustive." Amicus Br., *Gentry*, (No. 22-40219), 2023 WL 4303314 at *19. But "limiting language in a specific example has [a] limiting effect." *Id.* That's why, "as courts addressing the issue explain, hourly pay qualifies under 541.604(a) "only" for "hours worked beyond the normal workweek." *Id.* (collecting cases).

### C. Smith's theory would nullify § 604(b).

If paying a minimum weekly guarantee on a salary basis exceeding the minimum salary level were enough to avoid application of § 604(b), the second step of § 604(b)—comparing the "actual earnings" to the employee's guaranteed salary—would never occur. Similarly, if § 604(a) covered time-based payments for work within the normal workweek, § 604(b) would never apply. Just like the defendant in *Helix*, Smith's argument "relies on carting § 604(b) off the stage." *Id*.

But "respect for text forbids us from ignoring text." *Hewitt v. Helix Energy Sols. Grp., Inc.*, 15 F.4th 289, 292 (5th Cir. 2021) *aff'd*, 598 U.S. 39 (2023). "[T]he court 'consider[s] the regulation as a whole, with the assumption that the [agency at issue] intended each of the regulation's terms to convey meaning.' " *United States v. Fafalios*, 817 F.3d 155, 159 (5th Cir. 2016).

The only interpretation that gives meaning to both sections is that, under § 604(a), hybrid salary-plus-extras **generally** don't violate the salary basis requirement. But under § 604(b), hybrid arrangements that **specifically** include a salary plus hourly, daily or shift pay for hours within the normal workweek must meet the "reasonable relationship" requirement.

### D. Smith incorrectly argues its day rate isn't a day rate.

As the district court found based on the undisputed facts in the summary

13

judgment record, in addition to their annual salaries, Smith paid Appellants "additional compensation of a day rate paid for any day in which they are present on a customer's rig." ROA.2924; *see also* ROA.1490 (Appellants' Statement of Undisputed Material Facts).

Smith argues these payments "were not . . . day rates" but instead were "job bonuses" paid only for days Appellents worked on a rig. Smith Br. at 36. Smith argues "there may be a correlation" but "[j]ust because Appellants' job bonuses were calculated by reference to billable days worked does not transform them to a day rate method of compensation." *Id.* at 37.

But Smith doesn't dispute that the rate is computed on a daily basis, even if it isn't paid every day. And, as Smith itself has stated, "Plaintiffs spent the majority of their time on the rig." ROA.678 (Smith's Statement of Facts In Support of its Motion for Summary Judgment). Consequently, "[t]his day rate compensation accounts for the majority of each [Appellant's] total compensation." ROA.2924.

Section 604(b) applies when an employee's "earnings [are] computed on an hourly, daily, or shift basis" for hours within the normal workweek. Smith computed Appellants' earnings by adding the salary and the day rates based on the number of days worked. Smith could not issue Appellants a paycheck without counting the number of days they worked. Thus their earnings were

14

"computed" on a daily basis for the majority of the pay they received.

A § 604(b) day rate can't escape § 604(b)'s "reasonable relationship" requirement just because it arguably is also a bonus. As discussed above, § 604(a) sets out a **general** principle allowing additional compensation while § 604(b) establishes a **specific** rule for hourly, daily, and shift pay for hours in the normal workweek.

If § 604(a) specifically exempted all bonuses from the "reasonable relationship" requirement, perhaps there would be a conflict between § 604(a) and § 604(b) for bonuses computed on a daily basis. But it doesn't. Section 604(a) only establishes a general principle and provides three examples: (1) commission on sales; (2) a percentage of sales or profits; and (3) "compensation based on hours worked for work beyond the normal workweek." As discussed above, the only mention of a "bonus" in § 604(a) is the last sentence, which states "**such compensation**"—i.e., the compensation for work beyond the normal workweek mentioned in the previous sentence—can be on any basis, including a bonus.

Furthermore, if slapping a "bonus" label onto an hourly, daily, or shift rate were all it took, employers could easily evade § 604(b)'s "reasonable relationship" requirement. *See Guilbeau v. Schlumberger Tech. Corp.* 2023 WL 4424075, *6 (W.D. Tex. July 7, 2023) ("[h]ow Schlumberger characterized or

15

referred to the day-rate portion of Guilbeau's compensation does not control; the reality of the compensation arrangement and the textual requirements of the governing regulations do.").

### E. *Hebert* didn't consider the argument, much less conclude, that a day rate for hours within the normal workweek is covered by § 604(b).

Smith argues that in *Hebert v. FMC Techs., Inc.*, No. 22-20562, 2023 WL 4105427 (5th Cir. June 21, 2023), "the Court held that § 604(a) applies when an employee is paid a salary plus additional day-based compensation." Smith Br. at 29. Smith further argues that "nowhere in its analysis does the Fifth Circuit say that the nature of the additional compensation mattered." *Id.* at 30.

First, the Court certainly did not hold, as Smith argues, that § 604(a) applies **anytime** an employee is paid day-based compensation, even for hours within the normal workweek. That broad proposition is foreclosed by *Helix* and the text of the regulations, as discussed above. *See Helix* 143 S.Ct. at 689 (noting that Section 604(b) "speaks directly to when daily and hourly rates are consistent with the salary basis concept").

Second, as the magistrate judge noted in *Guilbeau*, , this Court "in *Hebert* was not considering the argument raised here—that the bonus payment was not a bonus or a premium payment at all but rather a day rate." 2023 WL 4424075 at *8 n. 3. Smith claims that "the Court specifically considered and rejected that argument." Smith Br. at 30. It didn't. *See Hebert*, 2023 WL 4105427. Smith

16

claims Hebert "argued that his base pay was a day rate." Smith Br. at 30. But the opinion mentions no such argument. *See Hebert*, 2023 WL 4105427. And Smith claims "[t]he Court rejected that argument in a footnote." Smith Br. at 30 (citing *Hebert*, 2023 WL 4105427 at *2 n.5). It didn't. In that footnote, the Court holds that "Section 604(b) is inapplicable here because the record shows Hebert was paid a guaranteed bi-weekly salary." It doesn't address any argument that his "field service premium" was a day rate. Rather, the Court cited § 604(a) in holding "Hebert does not lose his status as an employee paid on a salary basis just because he is also paid **a bonus** on top of the salary that the record has established was guaranteed to him." *Id.* at *2 (emphasis added).

Third, Hebert's pay arrangement contrasts starkly with the Appellants' pay here. Hebert "work[ed] in office environments and occasionally visit[ed] offshore sites to assist with the installation of FMC equipment." *Hebert*, 2023 WL 4105427 at *1 (emphasis added). For his usual office job, he was paid a salary. For "occasionally" working "in the field," he also received a "field service premium." *Id.* at *1. So even if the Court had considered the argument that the field service premium was a day rate, it might have concluded, based on *Hebert*'s unique facts, that it was for hours beyond the normal workweek.

Finally, even if *Hebert* had considered and rejected the argument that the pay at issue was a day rate (which it didn't), it wouldn't be binding on this Court

because *Hebert* was not a published opinion. Fifth Cir. Rule 47.5.4.

**F. *Anani* and *Litz* remain inapposite.**

Smith argues that this Court's *en banc* decision in *Hewitt* supports its position that inclusion of a salary is all it takes to meet § 602(a)'s requirements and avoid § 604(b). Smith Br. at 30. Smith relies on this Court's observation that its decision didn't conflict with *Anani v. CVS RX Servs., Inc.*, 730 F.3d 146 (2d Cir. 2013), or *Litz v. Saint Consulting Grp., Inc.*, 772 F.3d 1 (1st Cir. 2014). This Court noted that those cases "involve pay calculated 'on a weekly, or less frequent basis'—not pay 'computed on . . . a daily . . . basis." *Hewitt*, 15 F.4th at 297.

That was enough to distinguish *Anani* and *Litz* because it was undisputed that the plaintiff in *Hewitt* was paid entirely on the basis of a day rate. This Court did not hold that inclusion of a salary allows an employer to bypass § 604(b) even if it also includes payment on an hourly, daily, or shift basis.

Smith doesn't even respond to Appellants' brief noting why *Anani* and *Litz* are inapposite to this case. *See* Opening Br. at 25-26 (noting the extra pay in *Anani* was for work beyond the normal work week; in *Litz* the district court determined the extra pay was commission-based and the plaintiffs didn't challenge that ruling on appeal).

**III.    *Wilson* is wrong for the same reasons Smith is wrong.**

Smith relies heavily on the Tenth Circuit's decision in *Wilson v. Schlumberger Tech. Corp.*, 80 F.4th 1170 (10th Cir. 2023). *Wilson* erroneously "conclude[d] § 541.604(a) covers employees who received a fixed base salary above the FLSA minimum plus additional compensation that is paid on any basis, including time. Subsection (b) applies only to employees whose base compensation is computed on an hourly, daily, or shift basis." *Id.* at 1176. That conclusion is wrong for all the reasons discussed above. Without rehashing them all, Appellants discuss a few of the additional mistaken holdings *Wilson* relied on to reach its wrong conclusion.

**A. *Wilson* erroneously equates "earnings" in § 604(b) with "base salary."**

Section 604(b) applies when an employee's "earnings [are] computed on an hourly, daily, or shift basis . . . ." *Wilson* wholly substitutes the word "earnings" with "base salary" and, alternately, "base compensation." 80 F.4th at 1176. Wilson rewrites the regulation to apply only when an employee's "base salary" is computed on an hourly, daily, or shift basis. *Id.*

Section § 604(b) doesn't say that it applies only when **all** of an employee's earnings, or the salary portion specifically, are computed on an hourly, daily, or shift basis. Nor would that make any sense. After all, as discussed above, *Wilson*'s conclusion allows employers to end-run *Helix* by simply labeling a

portion of the compensation "salary" and slightly adjusting the daily rate.

> **B.** ***Wilson* manufactures the erroneous concept of "actual pay" to support the bogus distinction between a salary and a mere guaranteed weekly minimum.**

*Wilson* holds that "§ 541.604(a) applies when an employee receives a base **salary and additional compensation**, and § 541.604(b) applies when an employee is **merely guaranteed a minimum salary**, but is typically paid on an hourly, daily, or shift basis. This is the same false distinction discussed above on which Smith's theory hinges.

To support this conclusion, *Wilson* relies on a tortured interpretation of language in the DOL's final rule adopting the current version of § 541.604, which said the "reasonable relationship . . . requirement applies only when an employee's actual pay is computed on an hourly, daily or shift basis." 80 F.4th at 1177 (quoting Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22122-01, 22183 (Apr. 23, 2004)).

But "actual pay" and "actual compensation" can't mean only the salary portion because § 604(b)'s reasonable relationship test requires comparison of the salary portion to the total "amount **actually** earned"—i.e., the "employee's usual earnings at the assigned hourly, daily or shift rate for the employee's normal scheduled workweek." § 604(b) (emphasis added). That's all the DOL's

synonymous terms in its discussion of the final rule could have meant—exactly what § 604(b) says.

### C. *Wilson* **misinterprets § 604(a)'s "on any basis" by ignoring the key word "such."**

*Wilson* holds that "the regulation expressly states that 'additional compensation may be paid on any basis.' " 80 F.4th at 1177 (quoting § 604(a)). But *Wilson* omits the crucial word "such" in the phrase "such additional compensation." As discussed above, "such" means that the sentence modifies the previous sentence providing the example of additional pay "based on hours worked for work beyond the normal workweek." § 604(a). *Wilson*'s interpretation renders the phrase "for work beyond the normal workweek" pure surplusage, and conflicts with the explicit guidance from the Department of Labor.

### D. *Higgins* **and** *Bell* **are inapposite.**

*Wilson* and Smith cite a couple of cases in passing that are irrelevant here. In *Higgins v. Bayada Home Health Care, Inc.*, 62 F.4th 755 (3d Cir. 2023), the Third Circuit never mentioned § 541.604 at all. *Id.* That's because the district court noted that "Plaintiffs have not alleged, and the court does not discern, that the reasonable relationship test has not been satisfied." *Higgins v. Bayada Home Health Care, Inc.*, No. 3:16-CV-02382, 2021 WL 4306125, at *10 (M.D. Pa. Sept. 22, 2021).

21

In *Bell v. Callaway Partners, LLC*, 394 F. App'x 632, 634 (11th Cir. 2010), the additional compensation was paid for hours worked after 40 in a workweek—i.e., beyond the normal workweek.

## IV. This Court should reject Smith's argument that the DOL doesn't have the authority to establish a "salary basis" requirement.

Smith asks this Court to overrule its own longstanding precedent, parting with every other court to address the issue, and hold the "salary basis" test invalid as outside the DOL's authority. Smith Br. at 46-51.

### A. Smith forfeited the issue.

As Smith acknowledges, it didn't raise this issue in the district court and therefore it's waived. Smith Br. at 46; *see also Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021). Smith asks this Court to exercise its discretion to address the issue anyway.

But this Court applies the discretionary exception to forfeited arguments "very sparingly in circumstances very different than those here." *Belanger v. Geico Gen. Ins. Co.*, 623 F. App'x 684, 691 n. 30 (5th Cir. 2015). It is not applied where "a party has wholly ignored a major issue." *Id.* (quoting *New Orleans Depot Servs., Inc. v. Dir. Office of Worker's Comp. Programs*, 718 F.3d 384, 388 (5th Cir. 2013) (en banc)). The Supreme Court itself didn't consider the same argument worthy of the exception to forfeited arguments, and neither should this Court. *See Helix*, 598 U.S. at 49 n. 2 ("Following our usual practice, we therefore decline to

address its merits.")[5]

## B. Longstanding precedent upholds the "salary basis" requirement as a valid exercise of the DOL's authority.

Congress itself, the Supreme Court, this Court, and other appellate courts all have long upheld the "salary basis" requirement. "The power of an administrative agency to administer a congressionally created . . . program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984) (quoting Morton v. Ruiz, 415 U.S. 199, 231 (1974)). "If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation." *Id.* at 843-44. Such "ensuing regulation is binding in the courts unless procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute." *United States v. Mead Corp.*, 533 U.S. 218, 227 (2001). And "if the statute is silent . . . with respect to the specific issue, the question . . . is whether the agency's answer is based on a permissible

---

[5] Additionally, this Court should decline to grant an exception because another case challenging the DOL's authority based on largely overlapping arguments (that were not forfeited) is currently on appeal before this Court. *See Mayfield v. U.S. Dep't of Labor*, No. 1:22-CV-792-RP, 2023 WL 6168251, at *6 (W.D. Tex. Sept. 20, 2023) (rejecting argument that "salary level" test exceeds DOL's authority); *Mayfield v. LABR*, No. 23-50724 (5th Cir.). This Court would benefit from the DOL's briefing in *Mayfield*.

23

construction of the statute." *Chevron,* 467 U.S. at 843.

Smith argues "the DOL exceeded its authority as set forth in the FLSA by requiring that an exempt employee must be paid on a 'salary basis.'" Smith Br. at 45, heading. Smith claims "the text of the FLSA provides that it is an employee's job duties and not how they are paid that determines exempt status." Smith Br. at 47, heading. It's true the statute doesn't mention salary, but it doesn't mention duties either. Rather, it speaks only to "capacity"—"any employee employed in a bona fide executive, administrative, or professional capacity . . . as such terms are defined and delimited from time to time by regulations of the Secretary." 29 U.S.C. § 213(a).

As the Secretary of Labor recently explained: "'capacity' means 'position,' which in turn means '[r]elative place, situation, or standing; specif[ically], social or official rank or status.'" Amicus Br., *Gentry*, (No. 22-40219), 2023 WL 4303314 at *27 (quoting Capacity, 2 The Oxford English Dictionary 89 (1933) (Addendum C); Position, Webster's Dictionary 774 (5th ed. 1942) (Addendum D)). "Accordingly, for over 80 years, the Department's regulations have reflected the commonsense notion that an employee's status and the genuineness of their executive, administrative, or professional role is demonstrated in part through the fact that an employee is salaried." *Id.* at *27-28. "As the Department explained in 1949, 'compensation on a salary basis

appears to have been almost universally recognized as the only method of payment consistent with the status implied by the term bona fide executive.' " *Id.* at *28 (quoting DOL Wage and Hour Division Report accompanying its update to the Part 541 regulations in 1949 (the "Weiss Report")), *24.

"The FLSA grants the Secretary broad authority to define and delimit the scope of the exemption for executive, administrative, and professional employees." *Auer v. Robbins*, 519 U.S. 452, 456 (1997) (cleaned up, citing 29 U.S.C. § 213(a)(1)). "Under the Secretary's chosen approach, exempt status requires that the employee be paid on a salary basis . . . ." *Id.* Courts "must sustain the Secretary's approach so long as it is based on a permissible construction of the statute." *Id.* (cleaned up). The Supreme Court concluded that the "salary basis test" is indeed a permissible construction. *Id.* 456-458.

Likewise, this Circuit—along with every other Circuit to address the issue—has already found the "salary basis" requirement valid. *See Wirtz v. Mississippi Publishers Corp.*, 364 F.2d 603, 608 (5th Cir. 1966) ("We cannot say that the minimum salary requirement is arbitrary or capricious."); *Craig v. Far W. Eng'g Co.*, 265 F.2d 251, 259 (9th Cir. 1959); *Walling v. Yeakley*, 140 F.2d 830, 833 (10th Cir. 1944); *Walling v. Morris*, 155 F.2d 832, 836 (6th Cir. 1946), *vacated on other grounds*, 332 U.S. 442 (1947).

Not only has Congress expressly delegated the relevant authority to the

25

DOL, but Congress also ratified the DOL's use of a "salary basis" test. "When Congress amended the [FLSA] in 1949 it provided that pre-1949 rulings and interpretations by the Administrator should remain in effect unless inconsistent with the [1949 amendments]." *Mitchell v. Kentucky Fin. Co.*, 359 U.S. 290, 292 (1959); see Fair Labor Standards Amendments of 1949, ch. 736, § 16(c), 63 Stat. 920 (ratifying "[a]ny order, regulation, or interpretation" then in effect under the FLSA). Congress accordingly "underst[ood]" and ratified the regulations imposing the salary-basis requirement. *Steiner v. Mitchell*, 350 U.S. 247, 255 & n.8 (1956); see *Alstate Const. Co. v. Durkin*, 345 U.S. 13, 16-17 (1953) (declining to "repudiate an administrative interpretation of the [FLSA] which Congress refused to repudiate" in 1949).

Smith relies on *Nevada v. United States Dep't of Labor*, 275 F. Supp. 3d 795 (E.D. Tex. 2017), a non-binding district court case that doesn't even purport to overturn the longstanding precedent upholding the "salary basis" test. Indeed, the district court in *Nevada* specifically held that "[t]he use of a minimum salary **level**" at the previous amount "is consistent with Congress's intent," *id.* at 806 (emphasis added), but opined that the DOL's increase of the salary threshold **level** required for the "white collar" exemptions had "gone too far." *Id.* at 807. Before the Fifth Circuit had a chance to rule on *Nevada*, the DOL reduced the

salary threshold to a more modest increase[6] and dismissed its appeal. *See Nevada v. DOL*, No. 17-41130 (5th Cir. Feb. 27, 2020) (closing case).

Smith cites *Nevada*'s holding that the DOL doesn't "have the authority to categorically exclude those who perform" executive, administrative, or professional duties "based on salary level alone," Smith Br. at 48 (quoting *Nevada*, 275 F. Supp. 3d at 806), because the "salary test is just a proxy for the level of responsibility." *Id.* (citing 69 Fed. Reg. 22122, 22165 (April 23, 2004). But that proxy function only describes the "salary **level**" test, which is "distinct from the salary **basis** requirement. The purpose of the salary basis requirement, as noted above, is to screen out employees <u>who are not salaried</u> and therefore lack the requisite status for exemption." Sec'y of Labor Amicus Br., *Gentry*, (No. 22-40219), 2023 WL 4303314 at *28 n. 7. So even if Smith hadn't waived the issue, the salary basis test is valid and controlling.

## <u>CONCLUSION</u>

For these reasons, Appellants respectfully request that the Court reverse the district court's summary judgments and remand for further proceedings consistent with the Court's opinion.

---

[6] Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 84 Fed. Reg. 51230 (Sep. 27, 2019).

Respectfully submitted,

By: */s/ Aaron Johnson*

**Aaron Johnson**
TX Bar # 24056961
**FAIR LABOR LAW**
314 E. Highland Mall Blvd, Ste. 401
Austin, TX 78752
(512) 277-3505
(512) 277-3254 (fax)
ajohnson@fairlaborlaw.com

**Matthew S. Parmet**
LA Bar # 32855
**PARMET PC**
2 Greenway Plaza, Ste. 250
Houston 77046
(713) 999-5228
matt@parmet.law

**Kenneth St. Pé**
Louisiana Bar Roll # 22638
**ST. PÉ LAW**
311West University Ave., Ste. A
Lafayette, LA 70506
(337) 534-4043
(337) 534-8379 (fax)
kds@stpelaw.com

**Attorneys for Appellants**

## CERTIFICATE OF CM/ECF FILING AND SERVICE

I hereby certify that, on November 13, 2023, I filed a true and correct copy of the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notice of the electronic filing to all counsel of record.

*/s/ Aaron Johnson*
Aaron Johnson

28

## CERTIFICATE OF COMPLIANCE

This Brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(ii) because, excluding the parts of the Brief exempted under Fed. R. App. P. 32(f), the brief contains 6,498 words.

This Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 5th Cir. R. 32.1, as well as with the type style requirements of Fed. R. App. P. 32(a)(6), because this brief is prepared in a proportionally spaced typeface using Microsoft Word in 14-point, Calisto MT font, a Roman typeface, with the exception of footnotes in 12-point font.

*/s/ Aaron Johnson*
Aaron Johnson