# United States Court of Appeals for the Fifth Circuit

No. 22-30227

United States Court of Appeals
Fifth Circuit
**FILED**
September 4, 2024
Lyle W. Cayce
Clerk

Jack Venton Venable; Brent K. Kemp,

*Plaintiffs—Appellants*,

*versus*

Smith International, Incorporated,

*Defendant—Appellee*,

_____

William Aguirre,

*Plaintiff—Appellant*,

*versus*

Smith International, Incorporated,

*Defendant—Appellee*,

_____

Karl Drobish,

*Plaintiff—Appellant*,

*versus*

Smith International, Incorporated,

*Defendant—Appellee,*

_____

Charles Walter Myers,

*Plaintiff—Appellant,*

*versus*

Smith International, Incorporated,

*Defendant—Appellee,*

_____

Joel Brent Story,

*Plaintiff—Appellant,*

*versus*

Smith International, Incorporated,

*Defendant—Appellee.*

_____

Appeal from the United States District Court
for the Western District of Louisiana
USDC Nos. 6:16-CV-241, 6:17-CV-860,
6:19-CV-238, 6:19-CV-239, 6:19-CV-240

_____

Before Barksdale, Southwick, and Graves, *Circuit Judges.*

James E. Graves Jr., *Circuit Judge*:

Employees of Smith International, Inc., filed a claim for unpaid overtime wages under the Fair Labor Standards Act ("FLSA"). The district court granted Smith's motion for summary judgment and denied the employees' motion for partial summary judgment. Because each employee is a "bona fide executive," each employee is exempt from the FLSA's overtime pay guarantee. We AFFIRM.

## BACKGROUND

Smith International, Inc., is a corporation that provides a range of services to oil and gas exploration companies in Louisiana, Texas, and the Gulf of Mexico. DTR Field Specialists, also referred to as "reamers," play a critical role in Smith's business operations by supervising exploration companies' use of Smith's underreaming tool on offshore drilling rigs. Reamers' job responsibilities include: supervising the rig crew as they attach and remove the reamer tool to/from the drill string, monitoring and overseeing the reaming operation, providing advice and suggestions to the driller on how to operate and use the underreaming tool, and ensuring that the driller does not operate the underreaming tool in a manner that will damage the well or the tool. Drillers operated the underreaming tool; reamers supervised drillers.

Smith's compensation scheme for reamers was bifurcated—an annual salary and daily-rate job bonuses. Reamers' annual salary was paid bi-weekly and was not subject to reduction based on the quality or quantity of work performed. In addition to their salary, reamers could receive job bonuses if they provided services to Smith's customers on their drilling rigs. Each Reamer's total annual compensation exceeded $100,000.[1]

---

[1] The latest published version of the regulation increased the highly compensated employee total annual compensation threshold to $132,964 beginning on July 1, 2024. *See*

No. 22-30227

On February 22, 2016, the Appellants, a group of reamers, filed a collective action complaint claiming that Smith misclassified reamers as exempt from overtime requirements. The reamers sought to recover for unpaid overtime wages, liquidated damages, and attorney fees and costs under the FLSA.

On July 3, 2017, the district court conditionally certified the action as a collective action under 29 U.S.C. § 216(b). William Aguirre, Karl Drobish, Charles Myers, and Joel Story's claims were severed from the collective action proceeding into separate individual actions. Venable and Brent Kemp continued to pursue a collective action. On August 24, 2021, the district court consolidated the five proceedings for all purposes except for trial.

After discovery, the parties filed cross motions. Smith filed a motion for summary judgment based on the FLSA's bona fide executive exemption for highly compensated employees ("HCEs"), and the Appellants sought partial summary judgment arguing that the HCE exemption did not apply.

On March 25, 2022, the district court granted Smith's motion for summary judgment and denied Appellants' motion for partial summary judgment. The district court found that the bona fide executive exemption did apply. Appellants filed an appeal.

On May 2, 2022, the Appellants filed a motion to stay the appeal in light of the Supreme Court granting certiorari in *Helix Energy Solutions Group, Inc. v. Hewitt*, 15 F. 4th 289 (5th Cir. 2022), *cert. granted*, 589 U.S. 39 (2023). Appellants argued that their motions relied heavily on the Fifth Circuit's ruling in *Hewitt*. This Court granted their motion to stay the appeal.

---

29 C.F.R. § 541.601(a)(1). At the time Plaintiffs-Appellants filed their complaint, the relevant threshold was $100,000. *See* 29 C.F.R. § 541.601 (2004).

On February 22, 2023, the Supreme Court issued its *Hewitt* decision and this court removed the appeal from abeyance.

## STANDARD OF REVIEW

We review a district court grant of summary judgment de novo. *Union Pac. R.R. Co. v. City of Palestine*, 41 F.4th 696, 703 (5th Cir. 2022).

## DISCUSSION

The FLSA provides that employees shall not work more than forty hours per work week unless they are compensated at one and a half-time their regular rate of employment. 29 U.S.C. § 207(a)(1). The FLSA also exempts workers from its overtime-pay guarantee protection, such as employees that are employed "in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). If an employee is a "bona fide executive," then she is not entitled to overtime wages. *See Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. 39, 43 (2023).

Generally, an employee is a "bona fide executive" if the employee meets three criteria. First, the salary basis test requires that an employee "receives a 'predetermined and fixed salary'—one that does not vary with the precise amount of time he works." *Id.* at 45 (citing 84 Fed. Reg. 51230 (2019)). Second, the salary level test requires that an employee's "preset salary exceeds a specified amount." *Id.* Third, the job duties test assesses the employee's job responsibilities. *Id.*

The bona fide executive standard is different for lower-income employees versus higher-income employees. *Id.* A low-income employee is a bona fide executive if she is "[c]ompensated on a salary basis (salary-basis test); at a rate of not less than $455 per week (salary-level test); and carr[ies] out three listed responsibilities—managing the enterprise, directing other employees, and exercising power to hire and fire (duties test)." *Id.* (cleaned

up). An HCE—an employee that makes at least $100,000—is a bona fide executive if he meets the aforementioned salary basis and the salary level tests. *Id*. *See* 29 C.F.R. § 541.601(a) (Beginning on July 1, 2024, a highly compensated employee makes at least $132,964 per year). The duties test for higher-income employees, or HCEs, however, is more relaxed. *Hewitt*, 598 U.S. at 45. Under the duties test, the HCE "regularly performs" one, not all, of the following responsibilities: "managing the enterprise, directing other employees, and exercising power to hire and fire." *Id.*

Each Plaintiff-Appellant is a bona fide executive and therefore exempt from FLSA's overtime pay guarantee.

> 1. *Each employee meets the salary basis test under § 602(a), and the "reasonable relationship" requirement does not apply.*

The Appellants argue that although they satisfied the salary level test, they do not satisfy the salary basis test because they do not meet the "reasonable relationship" requirement. Smith contends that the "reasonable relationship" requirement does not apply. The district court agreed with Smith. So do we.

In *Hewitt*, the Supreme Court held that "a worker may be paid on a salary basis under § 602(a) or § 604(b)." *Id.* at 49. Section 602(a) permits the salary basis to be met with weekly payments or on a less frequent basis, and § 604(b) permits the salary basis to be met on "an hourly, a daily or a shift basis." *Id.* at 55. Appellants argue that because they were paid in part on a weekly salary basis and in part on a daily basis, the salary basis did not meet § 604(b). Appellants are misreading the statutory requirements.

As noted by the district court, the Appellants are paid under a hybrid compensation structure. Plaintiffs are not paid on an hourly, a daily, or a shift basis, and therefore § 604(b) does not apply. Plaintiffs are paid an annual

salary "which is not subject to reduction regardless of the numbers of hours or days worked and that salary more than satisfies the requisite guaranteed minimum weekly salary requirement." The Appellants misinterpret the weekly salary basis to be a *payment in part*. This is not the case, however. The pay is a *guaranteed* annual salary. In addition to their annual salary, the Appellants are given the opportunity to make additional compensation. For example, if an employee is present on a customer's rig, he is provided additional compensation at a day rate, which is accounted for in his *total* compensation. This additional day rate pay does not defeat the bona fide executive exemption, as the FLSA provides:

> An employer may provide an exempt employee with additional compensation without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly-required amount paid on a salary basis.

§ 604(a). The employees are salaried employees of Smith, and the additional compensation at the daily rate does not defeat their qualification for the bona fide executive exemption.

Moreover, the reasonable relationship test only applies in § 604(b) compensation schemes, not § 604(a) compensation schemes. *See Hebert v. FMC Techs., Inc.*, No. 22-20562, 2023 WL 4105427 (5th Cir. Jun. 21, 2023) (holding that if an employee is paid a salary plus additional compensation, the reasonable relationship test does not apply); *see, e.g., Gentry v. Hamilton-Ryker IT Sols., L.L.C.*, 102 F.4th 712, 723 (5th Cir. 2024) (explaining that employees who are paid an hourly rate meet the salary basis test if the employer guarantees "at least the minimum weekly-required amount paid on a salary basis"). "[T]here are two essential differences" between § 604(a) and § 604(b). *Id.* "First, § 604(a) expressly contemplates hourly compensation for work beyond the normal work week, while § 604(b)

concerns hourly compensation within the employee's normal scheduled workweek. Second, paragraph (b) requires there be a reasonable relationship between the guaranteed amount and the employee's usual weekly earnings; paragraph (a) contains no such requirement." *Id.*

### 2. *Each employee meets the salary level test.*

To meet the salary level test, an HCE must be paid "at a rate of not less than $455 per week." *Hewitt*, 598 U.S. at 57. Each Plaintiff-employee exceeded this amount. While employed at Smith:

- Venable was paid between $1,164.42 and $1,909.38 per week. Venable's total annual compensation was between $168,787.67 and $300,060.64.

- Kemp was paid $1,051.92 per week. Kemp's total annual compensation was between $143,600 and $214,044.61.

- Aguirre was paid between $2,176.92 and $2,309.62 per week. Aguirre's total annual compensation was between $253,599.60 and $279,323.54.

- Drobish was paid $1,320.19 per week. Drobish's total annual compensation was between $142,644 and $164,880.31.

- Myers was paid $1,007.69 per week. Myers' total annual compensation was between $145,526.84 and $282,457.88.

- Story was paid $1,011.54 per week. Story's total annual compensation was between $144,349 and $348,427.95.

### 3. *Each employee meets the job duties requirement.*

The Appellants' brief does not take issue with the district court's conclusion that the HCEs meet the job duties requirement. The district court is correct.

Section 601(a) provides that an HCE needs to make an annual salary of $100,000 or more, customarily perform a duty or responsibility of an

executive, administrator, or professional, and perform office or non-manual work. Relevant here, the Appellants perform duties or responsibilities of administrators, which has a more relaxed standard than the executive exempt duties standard. "[A]n employee [can] be an administrative HCE if the employee customarily and regularly perform[s] office or non-manual work directly related to the management or general business operations of the employer, § 541.200(a)(2), even if the employee's duties [do] not include the exercise of discretion and independent judgment with respect to matters of significance, § 541.200(a)(3)." *Smith v. Ochsner Health Sys.*, 956 F.3d 681, 685 (5th Cir. 2020) (cleaned up). Moreover, "employees acting as advisers or consultants to their employer's clients or customers" qualify for the administrative exempt standard. § 541.201.

Smith's HCEs qualify for the administrative exempt standard. As noted by the district court, the "Plaintiffs' work directly relates to the general business operations of Smith's customer[s]." As reamers, the Appellants "supervised Smith's customers' running of drilling tools offshore" to ensure that drillers were operating Smith's underreaming tool correctly. The reamers essentially served as liaisons between the drillers and Smith by assisting and advising Smith's clients on the appropriate method of conducting drilling operations. The reamers, therefore, acted as "advisers" to the drillers. § 541.201. The reamers performed these duties regularly and customarily. The reamers' primary job was supervising the use of drilling tools, and this was performed normally and routinely every work week.

The Appellants met the three criteria exempting them from the FLSA's overtime pay guarantee—(1) the salary basis test, (2) the salary level test, and (3) the job duties test. Smith, therefore, was not in violation of the FLSA by failing to compensate them in overtime pay for working in excess of forty hours. Because there is no genuine dispute of material fact, the district court appropriately granted Smith's motion for summary judgment and

denied the Appellants' motion for partial summary judgment. We AFFIRM.